NATIONAL LABOR RELATIONS BOARD v. DIXIE MOTOR COACH CORPORA-TION et al.

No. 9767.

Circuit Court of Appeals, Fifth Circuit.

May 27, 1942.

Rehearing Denied June 30, 1942.

202

Robert B. Watts, Gen. Counsel, N.L.R.B., Ernest A. Gross, Associate Gen. Counsel, N.L.R.B., and Howard Lichtenstein, Atty., N.L.R.B., all of Washington, D. C., for petitioner.

Karl H. Mueller, of Fort Worth, Tex., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

In proceedings before the National Labor Relations Board, it was determined that respondents had interfered with the rights of their employees to unite for purposes of collective bargaining, had refused to bargain collectively with their appropriate representative, had discriminatorily discharged three employees because of their union activities and had discharged one for giving testimony in a proceeding under the Act, all in violation of Section 8(1), (3), (4), and (5) of the National Labor Relations Act.[1] The order of the Board pursuant to these findings is before us upon a petition to enforce it, and the primary question for our decision is whether such findings are supported by substantial evidence.

Respondents' conduct, as disclosed by the record, clearly reveals that they were antagonistic to the efforts of their employees to organize a union; that they executed repeated maneuvers patently designed to discourage and thwart the same; that this attitude of respondents was plainly apparent to all employees, and effectively interfered with the formation and operation of the union. The record also supports the finding of the Board that respondents refused to bargain in good faith with the proper representative of the employees. There is substantial evidence to show that respondents deliberately resorted to dilatory tactics to postpone recognition of and bargaining with the appropriate representative of the employees, and used the time thus gained to coerce and intimidate enough of the members to withdraw from the union to deprive it of its majority. Such practices are not effective either to change the bargaining representative previously chosen or to excuse the respondents from their duty to bargain in good faith with that representative.[2]

Four employees, named Warren, Richards, McCullough, and Wilkinson, respectively, were found to have been discriminatorily discharged; and the order directed that they be reinstated with back pay. Each was discharged under different circumstances, so each discharge will be considered separately.

Warren, a capable employee with eight years of service, was discharged when the respondents were presented a petition, signed by more than half of the employees, requesting that he be discharged because he was a disturbing influence and a troublemaker. Warren was the spearhead in the union's drive to organize the employees, and was a member of the bargaining committee. His efforts to unionize the workers

---

[1] 49 Stat. 452, 29 U.S.C.A. § 158(1, 3–5).

[2] N. L. R. B. v. Bradford Dyeing Ass'n, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226; International Ass'n of Machinists v. N. L. R. B., 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. 50; Solvay Process Co. v. N. L. R. B., 5 Cir., 117 F.2d 83, Certiorari denied 313 U.S. 596, 61 S.Ct. 1121, 85 L.Ed. 1549.

had not been stopped by the coercive methods employed by the management, and he had failed to heed a subsequent warning by the superintendent to abandon his efforts in behalf of the union, lest he lose his job. The petition asking for his discharge was circulated among the employees by a notorious opponent of the union, who was known to be close to the manager, and the petition was written upon company paper with a company typewriter on company time and property. These facts support the inference that respondents instigated the circulation of the petition in furtherance of their desire to stamp out all union activities, and that the employees signed it because they feared reprisal if they opposed the will of the management. The finding that Warren was discharged because of his union activities is supported by the evidence, and the order directing his reinstatement with back pay will be enforced.

■ Richards, a bus driver, was discharged on August 31, 1938, and his continued use of intoxicating liquor after repeated cautionings against it was assigned as the reason therefor. In 1935 Richards had been laid off for several days because of his drinking, and he was then warned that a repetition of his conduct would result in his discharge. During the latter part of August, 1938, according to the testimony of six disinterested witnesses, Richards appeared repeatedly along the route taken by his bus in an intoxicated condition, and talked in loud tones and thick voice to another bus driver and a ticket agent in the presence of passengers. Some of the witnesses testified that Richards frequently became intoxicated, and that on occasions he drove his bus on his regular run before he had fully recovered from a drinking spree. More than once he had been seen wearing his driver's uniform while intoxicated.

Richards acknowledged that he had been suspended for drinking in 1935 and warned against repeating the offense; that he had drunk intoxicants intermittently between 1935 and 1938; and that he appeared along his regular bus route in the latter part of August, 1938, having in his possession a quart bottle of whisky from which he had drunk; but he denied that he was intoxicated on that occasion. On August 31, 1938, immediately after these occurrences, the manager of the companies directed the superintendent to discharge Richards, saying that he had reports that Richards had been drinking again; that all the other drivers knew about it; that he had warned Richards to stop drinking or lose his job; and that he must therefore be discharged. It is undisputed that the Rules and Regulations of the Railroad Commission of Texas forbid the operation of any motor bus by an operator who drinks intoxicating liquor either on or off duty.

Against this overwhelming evidence indicating that the reason for the discharge of Richards was that assigned by the manager, the record contains only the following: Richards' denial that he had been drinking regularly or was drunk on the occasion immediately preceding his discharge; evidence that Richards was an active union member and that his membership might reasonably have been known by the management; and the background of the hostile attitude of the companies toward the union. The public interest, as well as that of the employer, requires of any one entrusted with the lives and safety of the travelling public that he conduct himself in a manner in keeping with his responsibilities. We think the record is without substantial evidence to support the finding that Richards was discharged because of union activity, and that the reinstatement of such an employee to such a position would do violence to the public welfare and to the purposes of the National Labor Relations Act. The undisputed facts show that this employee's drinking habits were such as to place upon his employer the duty to discharge him.

■ Wilkinson was a loyal union member, who gave testimony before the Board favorable to the union and against the companies. One month later he was demoted, and two months thereafter he was laid off. These circumstances were relied upon by the Board to support the inference that the lay-off was actually a discharge caused by Wilkinson's testimony at the hearing. We would consider the finding well supported but for the presence of other admitted facts that render the inference arbitrary and unreasonable. It is acknowledged that both the demotion and the lay-off were necessitated by economic considerations, and that in each instance divisional seniority was recognized. Further, Wilkinson on two occasions was offered other positions with the companies, which he declined for reasons of his own, and the companies did not hire any new employee prior to Wilkinson's refusal of the employment offered. Such manifest willingness to continue Wil-

kinson in their employ is wholly inconsistent with the theory that the companies discharged him illegally because he gave testimony at the hearing, and the finding of discriminatory discharge cannot be upheld.

Finally, the record contains evidence from which an inference reasonably could be drawn that McCullough was laid off and was refused reemployment because of his union activities. McCullough's testimony, which was believed by the Board, disclosed that he was told by respondents' manager that McCullough's efforts to obtain help from the National Labor Relations Board had foreclosed him forever from again being employed by the respondents. No person may be discriminated against, either with regard to hire or tenure of employment, merely because he undertakes to avail himself of the rights accorded to him by law.[3] The action of the Board in directing this man's reinstatement is supported by the evidence.

The order under review will be modified to conform to this opinion, and, as modified, enforced.

---

[3] N. L. R. B. v. Mackay Radio & Telegraph Co., 304 U.S. 333, 58 S.Ct. 904, 82 L.Ed. 1381; Phelps Dodge Corp. v. N. L. R. B., 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271, 133 A.L.R. 1217.