NATIONAL LABOR RELATIONS BOARD
v. DEALERS ENGINE RE-
BUILDERS, Inc.

No. 14567.

United States Court of Appeals
Eighth Circuit.

Oct. 23, 1952.

Nancy M. Sherman, Atty., National Labor Relations Board, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Fanny M. Boyls, Atty., National Labor Relations Board, Washington, D. C., were with her on the brief), for petitioner.

Wayne Owen, Talley & Owen, Lawrence B. Burrow, Jr., Lawrence B. Burrow, Sr., and Moore, Burrow, Chowning & Mitchell, Little Rock, Ark., submitted brief for respondent.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The subject now presented for consideration is a petition of the National Labor Relations Board for enforcement of its order of August 8, 1951, directed to Dealers Engine Rebuilders, Inc.

The respondent is an Arkansas corporation. Its place of business is at Little Rock, Arkansas, where it is engaged in rebuilding motors for Ford automobile dealers in a territory embracing parts of five states. On November 29, 1949, Lodge 325, International Association of Machinists, was certified as the bargaining representatve of the machine shop employees of the respondent.

On August 4, 1950, the union filed charges against respondent, alleging that on April 3, 1950, (1) respondent discharged one N. G. Gillham because of his union activities and (2) that at all times since December 1, 1949, respondent refused to bargain collectively with the union in respect of rates of pay, wages, hours of employment and other conditions of employment.

A complaint was filed based on these charges and a hearing was had thereon before a trial examiner by whom an intermediate report was filed finding that Gillham was not discharged discriminatorily; but that respondent was guilty of refusal to bargain with the union in violation of § 8(a)(5) and (1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a)(1), (5). The respondent filed exceptions to the adverse findings of the examiner. The Board sustained the findings; and it seeks here a decree enforcing its order. The respondent denies that it refused to bargain in good faith with the union and it contends that the Board's finding on that issue is not supported by substantial evidence.

The Board's order is not based upon a finding that the respondent refused absolutely to negotiate with the union. The basis of its order is that

1. Respondent, by dilatory and delaying tactics and a lack of good faith in bargaining negotiations evinces a purpose to avoid making any agreement.

2. From December 13, 1950, through January, 1951, respondent granted numerous individual wage increases after notifying the union of its intention so to do, but that it refuses to negotiate with respect to such increases.

 If our decision depended upon our sustaining the first of these findings of the Board we would be disposed to deny the relief sought. A careful review of the record does not convince us that the finding of the Board that respondent was guilty of bad faith by dilatory negotiations is "supported by substantial evidence on the record considered as a whole" within the meaning of § 10(e) of the National Labor Relations Act as amended in 1947. See Universal Camera Corp. v. Labor Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

As to the finding of dilatory tactics, the record discloses that Lodge 325 was certified as the bargaining representative of respondent's machine shop employees on November 29, 1949. On December 1, 1949, W. C. Harris, Special Organizer for the union, sent a letter to Talley & Owen, attorneys for respondent, requesting an early conference and enclosing a proposed agreement consisting of 25 articles and an Appendix setting out the proposed rates of pay and a classification of the employees. A conference was finally arranged for January 20, 1950. Thereafter conferences were held on February 14, 1950; March 3 and 24, 1950; April 12, 1950; May 9 and 24, 1950; June 2, 22 and 26, 1950.

At these conferences the parties had, prior to the last meeting on June 26, 1950, agreed upon all the provisions of a contract except two—the respondent refused at that meeting (1) to consider the union's demand for a general wage increase of 10 cents per hour and (2) to grant vacations with pay. At the end of this meeting Harris, representing the union, stated that he would recommend to the employees that they accept the proposed contract without a general wage increase if the respondent would "restore the vacations," that is, grant vacations with pay. At this final meeting Kelly, representing the respondent, stated that the respondent's financial position was such he could not make any offer to the union; and since the respondent had nothing further to offer the negotiations ended. It is clear that had these two demands for increase in pay and vacations with pay been granted no complaint on the ground of delay would have been filed by the union. Though the union requested further conferences none were held. But, as said by the Supreme Court in Labor Board v. American National Insurance Co., 343 U.S. 395, 404, 72 S.Ct. 824, 829, referring to § 8(d) of the National Labor Relations Act:

"Thus it is now apparent from the statute itself that the Act does not encourage a party to engage in fruitless marathon discussions at the expense of frank statement and support of his position. And it is equally clear that the Board may not, either directly or indirectly, compel concessions or otherwise sit in judgment upon the substantive terms of collective bargaining agreements."

The respondent admits its obligation under the National Labor Relations Act, as amended by the Labor Management Relations Act of 1947, 29 U.S.C.A. § 141 et seq., to negotiate, but relies upon § 158(d) of that Act, 29 U.S.C.A., which says: " * * but such obligation does not compel either party to agree to a proposal or require the making of a concession: * * *."

 The facts in respect of the unilateral increases in wages are stated concisely in the Intermediate Report of the Trial Examiner as follows:

"The record discloses that during the bargaining negotiations the Respondent granted wage increases to some of its employees. The increases were based upon merit; and the Respondent did not advise or consult with the Union when they were granted. Four such increases were granted in March, 1950, one in August, four in October, five in November, and three on December 1, 1950. From December 13, 1950, to January 23, 1951, the Respondent sent the Union five letters in which the Respondent stated that it desired to grant 'merit increases' to certain employees and asked for the Union's 'consideration and advice.' By letters dated Jan-

uary 6 and January 24, 1951, the Union advised the Respondent that it did not approve of the merit increases, protested that they were illegal, and suggested that contract negotiations be resumed. The Respondent did not answer the Union's letters. Without further negotiations with the Union the Respondent granted about 40 merit wage increases."

Clearly the conduct of the respondent in so granting unilateral wage increases under the circumstances then existing was illegal and in violation of law. Medo Photo Supply Corp. v. Labor Board, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007. See, also, J. I. Case Co. v. Labor Board, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762; Labor Board v. Crompton-Highland Mills, Inc., 337 U.S. 217, 69 S.Ct. 960, 93 L.Ed. 1320; Labor Board v. May Department Stores Co., 8 Cir., 146 F.2d 66, affirmed 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145; Labor Board v. Berkley Machine Works & Foundry Co., 4 Cir., 189 F.2d 904.

■ The complaint charged that respondent by its officers acquiesced in "(a) Promising employees if they would forget about the Union they would get 'nice raises.'" The respondent denied this charge. In regard to this issue the Board found:

"3. We agree with the Trial Examiner's finding that Foreman Estes' promise to employee Gillham, 'that he could get him a pretty nice raise if he would forget the Union,' constituted an independent violation of Section 8(a)(1) of the Act. However, particularly in view of our finding of violation of Section 8(a)(5), we do not agree with the Trial Examiner that this violation

is so isolated as to warrant its exclusion from our order. Accordingly we shall include a provision directed against this violation in the order herein."

And in its order the Board directed that the respondent

"1. Cease and desist from: * * *

"(b) Promising wage increases if employees resign from the Union."

This finding and order is based wholly upon the testimony of N. G. Gillham, the discharged employee, whose discharge was found to be justified. This testimony is set out in the footnote.[1]

We find that the testimony considered in connection with the whole record does not support a finding that the respondent promised wage increases "if employees resign from the Union."

■ A careful review of the record establishes no lack of good faith or lack of consistency with the principle of collective bargaining on the part of respondent except in connection with the subject of unilateral wage increases for merit without negotiating with the union. In this one regard the respondent failed to perform its statutory duty to bargain collectively with the union.

Accordingly, there exists no reason for enlarging the scope of the enforcement decree beyond that feature. The order of the Board should not require other specific affirmative action by the respondent nor the posting of any notices by it. See Labor Board v. Crompton-Highland Mills, Inc., 337 U.S. 217, 69 S.Ct. 960, 93 L.Ed. 1320.

A decree enforcing the Order of the Board as modified by this opinion will be entered.

[1] "Q. Now, before you were laid off did you have any conversation with foreman Estes about the Union? A. Oh, yes.

"Q. About how long before you were laid off? A. I would say two or three weeks, three weeks.

"Q. Where was that conversation? A. Well, he came out there one morning before worktime and he called me and he said, 'Come in here, I want to talk to you about something', so I didn't know what he wanted. I went in there with him. We went in about the center of the parts

department, and he told me that he could get seven of us, and that included hisself, pretty nice raise if we could get the union, and I told him that I wouldn't do that. I talked to the other boys, if they wanted to get it I would go with them. Whichever way they went, I would go with them.

"Q. Did you have any further discussion with him on it? A. No, I said I would talk to them, and he never did ask me, and I never did say anything to him about it."