289 F.2d 700
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
Benne KATZ, Alfred Finkel and Murray Katz, d/b/a
Williamsburg Steel Rpoducts Company, Respondent.
 No. 82, Docket 26289.
 United States Court of Appeals Second Circuit.
 Argued Nov. 15, 1960.
Decided April 11, 1961.
 
 Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel Frederick U. Reel, James A. Ryan, Attys., N.L.R.B., Washington, D.C., for petitioner.
 Raphael, Searles, Levin & Vischi, New York City (Sidney O. Raphael, Leo M. Drachsler, New York City, of counsel), for respondent.
 Before LUMBARD, Chief Judge, and WATERMAN and MOORE, Circuit Judges.
 WATERMAN, Circuit Judge.
 
 
 1
 The National Labor Relations Board has petitioned this court pursuant to Section 10(e) of the National Labor Relations Act (NLRA) for enforcement of an order of January 22, 1960 it issued against the respondent, Benne Katz, Alfred Finkel and Murray Katz, d/b/a Williamsburg Steel Products Company (Employer).
 
 
 2
 The General Counsel's Complaint and Notice of Hearing was issued to Employer on September 8, 1958 based upon charges of unfair labor practices made by Architectural & Engineering Guild, Local 66, American Federation of Technical Engineers AFL-CIO (Union). The Complaint alleged that 'Employer did refuse and continues to refuse to bargain collectively with Local 66 as the exclusive bargaining representatives of all the (technical engineering employees of Employer's Engineering Department in New York) in that:
 
 
 3
 '(a) In or about March 1957, and at various times thereafter to date, Respondent Employer unilaterally changed the terms and conditions of employment relating to sick leave of empolyees in the unit described above.
 
 
 4
 '(b) In or about April 1957, and at various times thereafter to date, Respondent Employer unilaterally changed existing wage rates and other terms and conditions of employment of employees in the unit described above.
 
 
 5
 '(c) Since in or about March 1957, and at various times thereafter to date, Respondent Employer bargained directly and individually with employees in the unit described above * * *, concerning rates of pay, wages, hours of employment, or other terms and conditions of employment.
 
 
 6
 '(d) In or about June and July 1957, Respondent Employer, through its agents, supervisors or representatives, including Herbert Jacobson and others unknown, aided and assisted employees in the unit described above * * * to repudiate Local 66 as their bargaining representative.
 
 
 7
 '(e) In or about June, July and August 1957, and at various unknown times thereafter to date, Respondent Employer, in derogation of Local 66's representative status, through Respondent Employer's agents, supervisors or representatives including Jacobson, Wisniewski and others unknown, publicized, sponsored, approved, permitted, attended and participated in meetings on its premises of employees in the unit described above.'
 
 
 8
 These allegations were claimed to constitute separate unfair labor practices within the meaning of Sections 8(a)(1) and 8(a)(5) of the N.L.R.A., 29 U.S.C.A. 158(a)(1), 158(a)(5).
 
 
 9
 After Employer's answer was filed a long contested hearing ensued before a Trial Examiner in which, as appears to be normally the case, two completely divergent versions of the history of the collective bargaining of the parties were presented. The Trial Examiner chose to accept the version presented by the Board's counsel, and his findings were unfavorable in every respect to Employer. He found that subsequent to the certification of Union on July 5, 1956 and during the negotiating of an initial collective bargaining agreement the following acts of Employer occurred:
 
 
 10
 (a) In October 1956 and January 1957 Employer unilaterally granted merit increases to its employees without notice to or negotiation with Union.
 
 
 11
 (b) On or about March 11, 1957 Employer unilaterally made a substantial change in its sick leave policy without notice to Union.
 
 
 12
 (c) In April 1957 Employer announced a new system of wage increases: 'These increases were announced without notice to, or consultation with, the Union and were substantially better than what Respondent had previously offered the Union.'
 
 
 13
 The Trial Examiner next considered and rejected the reasons advanced by Employer explaining the action taken. He concluded:
 
 
 14
 'Rather than demonstrating bad faith bargaining by the Union, the entire record compels the conclusion that it was Respondent's conduct which brought the negotiations to naught. Thus, Respondent's unilateral action heretofore found, 'while negotiations were still continuing, and in complete disregard of the Union's status, provides the final insight into Respondent's conduct of the negotiations with the Union. It clearly shows that * * * Respondent was merely going through the motions of collective bargaining without a genuine intention of trying to negotiate an agreement with the Union as required by the provisions of the Act.'
 
 
 15
 'On the entire record I find and conclude that by taking the unilateral action above found before any claimed impasse was reached, and while negotiations were pending, Respondent did so in clear disregard of its obligation to bargain with the Union as the exclusive bargaining representative of its employees, and thereby undermined the authority which the Act bestowed upon the Union. By that conduct, Respondent violated Section 8(a)(1) and (5) of the Act. Medo Photo Supply Corporation v. N.L.R.B., 321 U.S. 678, 683-684 (64 S.Ct. 830, 88 L.Ed. 1007); May Department Stores Co. v. N.L.R.B., 326 U.S. 376, (66 S.Ct. 203, 90 L.Ed. 145); N.L.R.B. v. Crompton-Highland Mills, Inc., 337 U.S. 217 (69 S.Ct. 960, 93 L.Ed. 1320).'
 
 
 16
 In a short decision the Board accepted the Examiner's factual findings (a), (b) and (c) above set forth in the second preceding paragraph. It rejected the Examiner's finding that Employer had failed to bargain in good faith,[1] but interpreted the unilateral acts as having been in themselves unfair labor practices within the purview of 8(a)(1) and 8(a)(5).
 
 
 17
 An order was issued directing Employer to cease and desist from:
 
 
 18
 (a) 'Unilaterally changing wages, rates of pay, or sick leave, or granting merit increases, or in any similar or related manner refusing to bargain collectively with (Union) * * *'
 
 
 19
 (b) 'Refusing to bargain collectively concerning rates of pay, wages, hours of employment, and other conditions of employment with the Union * * *'
 
 
 20
 And Employer was also affirmatively directed to bargain collectively if requested to do so.
 
 
 21
 We are of the opinion that the unilateral acts here complained of, occurring as they did during the negotiating of a collective bargaining agreement, do not per se constitute a refusal to bargain collectively and per se are not violative of 8(a)(5). While the subject is not generally free from doubt, it is our conclusion that in the posture of this case a necessary requisite of a Section 8(a)(5) violation is a finding that the employer failed to bargain in good faith. Moreover, we conclude that here the 8(a)(1) violations found by the Board derived from the violations of 8(a)(5) that it found, and that these violations, also, are unproved without the necessary finding that the employer failed to act in good faith.
 
 
 22
 * Section 8(a)(5) provides that it shall be an unfair labor practice for an employer 'to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 9(a) of this title.'[2] Sections 8(a)(5) (then 8(5)) and 9(a) were part of the original National Labor Relations Act of 1935 and were early interpreted to require that in the interest of industrial peace the employer confer and negotiate with the accredited representative of his employees, N.L.R.B. v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893. However, the act was not read to compel agreement. N.L.R.B. v. Jones & Laughlin Steel Corp., supra, at page 45, 57 S.Ct. 615. Therefore, it is not difficult to find a violation of 8(a)(5) where the employer completely refuses to confer and to negotiate with the union representative of his employees.[3] On the other hand, it is difficult indeed to determine whether the employer is in fact negotiating and conferring in an attempt to resolve differences with his employees, i.e., bargaining 'in good faith,' once the employer meets the union at the collective bargaining table. Such a determination rests upon a subjective evaluation of the employer's attitude.[4] This evaluation can only be effectively made in terms of the complete bargaining situation.
 
 
 23
 In 1947 Congress re-evaluated the NLRA. At that time there was some concern expressed in the House of Representatives over the vagueness of the concept of the employer's duty to 'bargain in good faith.' It was suggested that perhaps a statutory definition of 'collective bargaining' would solve that vagueness for there would then be an objective standard governing an employer's actions, which, if not met by the employer, would thereby constitute a refusal to bargain and consequently be a violation of 8(a)(5). A formalistic, procedural definition of 'collective bargaining' was included in the Bill that passed the House (H.R. 3020, 80th Cong. 1st Sess. 2(11)(1947)). See I Legislative History of the Labor-Management Reporting and Disclosure Act of 1947, at 311. Senate amendments to the House Bill contained no such definition. The Senate desired to retain and make statutory the subjective test developed by adjudication under the original 1935 Act and refused to concur in the inclusion of the rigid definition of 'collective bargaining' desired by the House. It was the Senate view that the approach the House proposed would retard rather than advance the course of collective bargaining and the cause of industrial peace, for the employer's true intent would be immaterial and a recalcitrant employer need only pro forma comply with procedural provisions to avoid committing an unfair labor practice. A Committee of Conference report recommended the adoption of the Senate's amendment. This report was accepted by both Houses and hence the 'good faith' test was enacted into law, becoming Section 8(d) of the present act (29 U.S.C.A. 158(d)). See H.R.Rep. No. 510, 80th Cong. 1st Sess. 34-35 (1947). It provides:
 
 
 24
 '(d) For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession: * * *'
 
 
 25
 And a corresponding duty to bargain in good faith was imposed upon the union by Section 8(b)(3) of that Act which provides that it shall be an unfair labor practice for a labor organization 'to refuse to bargain collectively with an employer.' 61 Stat. 141 (1947), 29 U.S.C.A. 158(b)(3). It is significant that this statutory test has remained unchanged from 1947 to date even though the Act was largely amended in other particulars in 1951 and in 1959. Thus the development and future design of the test of 'bargaining in good faith' was left to adjudicative development through the decisions of the National Labor Relations Board and of the courts.[5]
 
 
 26
 The N.L.R.B. urges upon this court that unilateral action taken by an employer regarding bargaining matters when employees are represented by a Board certified bargaining agent is completely inconsistent with the principle of collective bargaining and conclusively determines that the employer in so doing was not acting in good faith. The Board cites N.L.R.B. v. Crompton-Highland Mills, 1949, 337 U.S. 217, 69 S.Ct. 960, 93 L.Ed. 1320 as authority for this proposition. Admittedly, this approach on the part of the N.L.R.B. is consistent with a number of its administrative decisions. See, e.g., Union Mfg. Co., 96 N.L.R.B. 792 (1951); Sullivan Dry Dock & Repair Corp., 67 N.L.R.B. 627 (1946). Our consideration of N.L.R.B. v. Crompton-Highland Mills, supra, in conjunction with other relevant Supreme Court cases interpreting 8(a)(5) and its predecessor 8(5) convinces us that the N.L.R.B. has erred in its interpretation.
 
 
 27
 N.L.R.B. v. Crompton-Highland Mills, supra; May Department Stores Co. v. N.L.R.B., 1945, 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145; and Medo Photo Supply Corp. v. N.L.R.B., 1944, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007 were decided under Section 8(5) of the 1935 Act. Both Medo and May are significantly different from the present case. In Medo the employer negotiated independently with a group of employees and agreed to grant a wage increase in return for a repudiation of the union. There can be no doubt that this was a flagrant violation of Section 8(5) as a refusal to bargain. May, too, involved a situation where the employer completely refused to recognize and bargain with the Board certified union. The Crompton-Highland Mills case is closer to the case at issue. In Crompton there had been extended negotiations which had reached an impasse. Thereafter, without prior consultation with the union, the employer granted a unilateral wage increase substantially in excess of anything previously offered the union. This action was interpreted by the Board to show that the employer was not acting in good faith during the negotiations. The reasons the employer advanced to justify the unilateral increase were rejected by the Board, and it is important to note, of course, that the Board made an express finding that the employer had failed to bargain in good faith. The Court affirmed the Board's findings.
 
 
 28
 Subsequent to the amendments of 1947 by which, as discussed above, 8(5) became 8(a)(5) without any change in text, the Supreme Court decided N.L.R.B. v. Insurance Agents' Union, 1960, 361 U.S. 477, 80 S.Ct. 419, 4 L.Ed.2d 454; N.L.R.B. v. Wooster Division of Borg-Warner Corp., 1958, 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823; N.L.R.B. v. Truitt Mfg. Co., 1956, 351 U.S. 149, 76 S.Ct. 753, 100 L.Ed. 1027; N.L.R.B. v. American National Ins. Co., 1952, 343 U.S. 395, 72 S.Ct. 824; N.L.R.B. v. Mexia Textile Mills, 1950, 339 U.S. 563, 70 S.Ct. 826, 833, 94 L.Ed. 1067; and N.L.R.B. v. Pool Mfg. Co., 1950, 339 U.S. 577, 70 S.Ct. 830, 94 L.Ed. 1077. Mexia and Pool were companion cases primarily dealing with a problem which arose with respect to the enforcement of the Board's orders where 8(a)(5) violations had been found. In both cases the 'failure to bargain was manifest from evidence'[6] of incidents that occurred during negotiations-- incidents that included, among others, a unilateral wage increase and the deliberate shunting of union officials from one company official to another, in order to make any progress impossible. Once again the Trial Examiner and the Board concluded that these various incidents indicated 'an unmistakable effort to escape genuine collective bargaining.' 339 U.S. 563, at page 565, 70 S.Ct. at page 828. In American National Insurance Co. the employer, without prior consultation with the union, instituted unilateral changes in working conditions by the establishment of new night shifts and the introduction of a new system of lunch hours. The Trial Examiner found that 'upon review of the entire negotiations, including respondent's unilateral action in changing working conditions during the bargaining * * * respondent (employer) had refused to bargain in a good faith effort to reach agreement.'[7] This finding was adopted by the Board and subsequently affirmed by the Court of Appeals for the Fifth Circuit, 1951, 187 F.2d 307. Commenting upon the decision of the Fifth Circuit the Supreme Court said: '* * * respondents' unilateral action in changing working conditions during bargaining does support a finding that respondent had not bargained collectively in good faith as required by the Act.' 343 U.S. 395, at page 401, 72 S.Ct. at page 828. In its later discussion of the question actually before it on appeal, i.e., whether an employer's desire to insert a management function clause was a per se violation of the Act, the Supreme Court stated that a management functions clause, although it gave an employer the initial responsibility for certain working conditions, was assuredly a valid clause. Therefore, bargaining for such a clause was an employer's prerogative-- the only requirement being that he bargain for it in good faith. The Court went on to say: 'The court below correctly applied the statutory standard of good faith bargaining to the facts of this case. It held that the evidence, viewed as a whole does not show that respondent refused to bargain in good faith by reason of its bargaining for a management functions clause as a counterproposal to the Union's demand for unlimited arbitration.' 343 U.S. 395, at page 409, 72 S.Ct. at page 832.
 
 
 29
 In Truitt the Supreme Court enforced a Board order that the Court of Appeals for the Fourth Circuit had refused to enforce and held that a 'refusal to attempt to substantiate a claim of inability to pay increased wages may support a finding of a failure to bargain in good faith.' 351 U.S. 149, at page 153, 76 S.Ct at page 756. In order to substantiate his good faith, therefore, an employer could be required to make a reasonable attempt, one not overly burdensome to him to justify his claim of slender finances. But, said the Supreme Court, 'We do not hold * * * that in every case in which economic inability is raised as an argument against increased wages it automatically follows that the employees are entitled to substantiating evidence. Each case must turn upon its particular facts. The inquiry must always be whether or not under the circumstances of the particular case the statutory obligation to bargain in good faith has been met.' 351 U.S. 149, at pages 153-154, 76 S.Ct. at page 756.[8]
 
 
 30
 The employer in Borg-Warner insisted upon the inclusion of certain clauses in the bargaining agreement that the Court held were not the subject of mandatory bargaining under 8(d), and therefore his insistence was found to demonstrate that the employer was not bargaining in good fith, and, in effect, was committing a per se violation of 8(a)(5). Borg-Warner is thus distinguished from American National Insurance Co. where the clauses insisted upon were subjects of mandatory bargaining. Borg-Warner appears difficult to reconcile with the prior pattern of adjudication which required, as a prerequisite to 8(a)(5) violation, a finding of a lack of good faith based on consideration of the totality of the collective bargaining events. In a dissenting opinion, 356 U.S. 351, 78 S.Ct. 718, Justice Harlan, joined by Justices Clark and Whittaker, reminded the Court of the long prior history that had avoided rigid restrictions on the bargaining process. He pointed out that unions might be severely circumscribed in their activities if all that unions could bargain for were those matters which were subjects of mandatory bargaining under 8(d). Moreover, Justice Harlan stated that he was unable to grasp the majority's reasoning that an employer in good faith could propose matters not the subject of mandatory bargaining and that such subjects could properly be included in a collective bargaining agreement, but that the insistence by the employer upon the inclusion of such matters in the agreement was per se indicative of a lack of good faith and a violation of the Act.
 
 
 31
 The Court returned to its former approaches in the next case to come before it. In N.L.R.B. v. Insurance Agents' International Union, 361 U.S. 477, 80 S.Ct. 419, 4 L.Ed.2d 454, the Court construed 8(b)(3) of the Act-- which, as described above, is as to unions the corollary of Section 8(a)(5)-- to mean that economic sanctions exerted by a union were not per se violative of 8(b)(3) but the totality of the behavior of the union as portrayed throughout the entire negotiations must be judged by the good faith test. The Court again retraced the history of the affirmative duty placed by the Act upon both union and employer to bargain collectively in good faith. It again conceived the function of the National Labor Relations Board to be that of an agency existing for the purpose of encouraging parties to reach collective bargaining agreements, and that once this function is concluded the parties must be left to their own uninterfered-with devices provided only that they bargain fairly and are desirous of reaching agreement.
 
 
 32
 Recognizing that so subjective a standard necessarily produces, case by case, many divergent decisions, how, then, should this court approach the unilateral acts of Williamsburg Steel Products Company which the Board urges upon us are per se violations of 8(a)(5)? One scholar in the field has stated the general problem as follows:
 
 
 33
 'Whether unilateral action is an unfair labor practice per se depends on whether the National Labor Relations Act seeks to compel joint participation or leaves the joint participation to evolve without additional legal sanction after it has created opposing concentrations of economic power.' Cox, Duty to Bargain in Good Faith, 71 Harv.L.Rev. 1401, 1424 (1958).
 
 
 34
 We are convinced by the legislative and judicial history of the NLRA that it is the latter alternative which the Act contemplates. We believe that with an over-all consistency through all the cases, the Supreme Court has concerned itself with the totality of negotiations and has been loath to look at specific acts as being violative of the Act apart from the bargaining totality. N.L.R.B. v. Insurance Agents' International Union, supra, the Court's most recent word, supports our position. If the N.L.R.B. were given the power to involve itself with the myriad specific acts that make up a labor-management negotiation we would no longer have employer-employee negotiation but enforced governmental arbitration.
 
 
 35
 It is true, as the Board suggests, that the most plausible inference to be drawn from a unilateral change in working conditions, mandatory subjects of collective bargaining under 8(d), is that the employer is no longer bargaining in good faith. And the nature and extent of the changes so instituted may gove added weight to such an inference.[9] However, the fact of the unilateral change does not require the inference of a failure to bargain in good faith and the consequent finding that there has been a violation of 8(a)(5). The evidence must be tested within the framework of the entire bargaining situation. An opportunity must first be given the employer to rebut the inference, and finally there must be a definite determination of the mental attitude of the employer. The language of the Supreme Court indicates that, beginning with Crompton and concluding with Insurance Agents' Union, the above described approach is the correct one.[10]
 
 
 36
 This court is next presented with the problem of whether we ourselves may test the inference arising from Employer's unilateral acts on a petition for enforcement or whether we must remand to the National Labor Relations Board for its initial determination of this issue. In all the Supreme Court cases that we have discussed in which the Board's order was enforced there had been a Board finding that the respondent-employer had failed to bargain in good faith. Here, the Board explicitly declined to do so. Justice Frankfurter, concurring in N.L.R.B. v. Insurance Agents' Union, supra, which struck down the Board's finding of a per se violation, disposed of this problem for us in the following language:
 
 
 37
 'In enforcing the duty to bargain the Board must find the ultimate fact whether, in the case before it and in the context of all its circumstances, the respondent has engaged in bargaining without the sincere desire to reach agreement which the Act commands.' (361 U.S. at page 504, 80 S.Ct. at page 435).
 
 
 38
 This interpretation of the proper duty of the Board is consistent with that found in all of the cases decided by the Court and is in accord with the legislative history of the Act.
 
 
 39
 In this case the Board has not made a finding that Employer failed to bargain in good faith-- in fact, the Trial Examiner's finding of bad faith was expressly rejected by it. Although we might, therefore, be justified in denying enforcement without remand, we think that since the Board's finding of an unfair labor practice impliedly proceeds from an erroneous view that specific unilateral acts, regardless of bad faith, may constitute violations of 8(a)(5), the case should be remanded to the Board in order that it may have an opportunity to take additional evidence, and make such findings as may be warranted by the record.
 
 II
 
 40
 There remains for our consideration the Board's finding that the unilateral acts were violative of 8(a)(1) as well as 8(a)(5). Section 8(a)(1) provides:
 
 
 41
 '(a) It shall be an unfair labor practice for an employer--
 
 
 42
 '(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;'
 
 
 43
 This subsection is broadly drawn and it guarantees to employees their basic rights under the NLRA. Necessarily it encompasses many of the more specific violations contained in the succeeding subsections 8(a)(2)-8(a)(5). It has become customary for the Board to find that activities violative of subsections of 8(a) that follow 8(a)(1) are also violative of 8(a)(1). In a Section 8(a) (5) situation this often results in a Board finding that the employer has failed to bargain in good faith in violation of 8(a)(5), and that this failure to bargain in good faith is an interference with the exercise of the rights of his employees and thereby violative of 8(a)(1). See N.L.R.B. v. Crompton-Highland Mills, supra; N.L.R.B. v. Express Pub. Co., 1941, 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930; N.L.R.B. v. National Shoes, 2 Cir., 1953, 208 F.2d 688; N.L.R.B. v. Niles-Bement Pond Co., 2 Cir., 1952, 199 F.2d 713. The situation just described is different from ones where there are separate independent acts that violate 8(a)(1). See, e.g., May Department Stores v. N.L.R.B., supra; Medo Photo Supply Corp. v. N.L.R.B., supra. We have a situation before us in which the section 8(a)(1) violations were derivative-- similar to the cases cited above and very different from May.
 
 
 44
 The complaint stated that Employer refused to bargain, enumerated the acts which evidenced the refusal to bargain, and charged that therefore 8(a)(1) and 8(a)(5) were both violated. The Trial Examiner found that Employer had violated his duty to bargain with Union under 8(a)(5) and hence also violated 8(a)(1). As discussed previously, the Board found Employer's unilateral acts violative of the two sections but rejected the examiner's finding that Employer did not bargain in good faith. However, the Board's order, set out herein, was directed exclusively to the refusal to bargain. This history leads us to believe that the complaint was based upon an alleged 8(a)(5) refusal to bargain, that the alleged 8(a)(1) violations are derivative only, and that the finding that 8(a)(1) has been violated must be reviewed in the light of the review we have ordered the Board to make with respect to its finding that 8(a) (5) was violated.
 
 
 45
 Enforcement denied. Cause remanded to the National Labor Relations Board for further proceedings consistent with this opinion.
 
 
 46
 LUMBARD, Chief Judge (dissenting).
 
 
 47
 In my opinion there is support in the record for the Board's finding that the employer coerced and restrained the employees in violation of 8(a)(1) of the National Labors Relations Act, 29 U.S.C.A. 158(a)(1), by granting a unilateral wage increase higher than that offered to the union. I think there is also sufficient evidence in the record to support the Board's conclusion that the employer refused to bargain with respect to a mandatory subject of bargaining in violation of 8(a)(5) by unilaterally changing sick leave policy during the negotiations. I would not remand the case to the Board to make a finding with regard to the employer's good faith since no allegation of bad faith bargaining was made in the complaint and there is insufficient evidence in the record as a whole to support a finding that the employer bargained in bad faith. I would modify the order of the Board so as to prohibit only the general wage increase and the change in sick leave policy, and I would grant enforcement of the order as modified.
 
 
 48
 As I read Judge Waterman's opinion, the majority's view is that the acts committed here by the employer could amount to unfair labor practices only if the Board found that the employer was bargaining in bad faith and had no intention of reaching an agreement with the union. I think that neither reason nor precedent supports these conclusions.
 
 I.
 
 49
 My brethren dispose of the charges made against the employer for violation of 8(a)(1) of the Act by deciding that they were 'derivative' and dependent on the finding that 8(a)(5) had been violated. I disagree. The language of both the complaint filed with the Board and the Intermediate Report of the Trial Examiner reveal that separate 8(a)(1) violations were alleged and found.[1]
 
 
 50
 I would enforce the order of the Board insofar as it held the unilateral grant of a wage increase which was higher than that offered to the union to be restraint or coercion under 8(a)(1). Had the wage increase been equal to or less than the proposal made to the union, it would not have violated 8(a)(1). N.L.R.B. v. Bradley Washfountain Co., 7 Cir., 1951, 192 F.2d 144; see N.L.R.B. v. Crompton-Highland Mills, 1949, 337 U.S. 217, 224-25, 69 S.Ct. 960, 93 L.Ed. 1320. But the employer's more generous offer to the employees individually than the one made to their union representatives could only have induced them to abandon the union, which they soon did by decertification proceedings. See Medo Photo Supply Corp. v. N.L.R.B., 1944, 321 U.S. 678, 684, 64 S.Ct. 830, 88 L.Ed. 1007. The effect of a substantial unilateral wage increase greater than that offered to the union is to disparage the union and thereby coerce the employees to bargain individually; 'such action in itself constitutes an unfair labor practice.' N.L.R.B. v. National Shoes, Inc., 2 Cir., 1953, 208 F.2d 688, 692.
 
 
 51
 Whether 8(a)(1) has been violated depends not on the employer's intent but on whether the act in question would tend to discourage union membership. N.L.R.B. v. Gaynor News Co., 2 Cir., 1953, 197 F.2d 719, affirmed Radio Officers Union of Commercial Telegraphers Union A.F.L. v. N.L.R.B., 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455; see Time-O-Matic, Inc. v. N.L.R.B., 7 Cir., 1959, 264 F.2d 96, 99. The substantial unilateral wage increase not only tended to have such an effect but was probably instrumental in the employees' ultimate decision to decertify. I would hold it to be a violation of 8(a)(1).
 
 II.
 
 52
 With respect to the obligations imposed by 8(a)(5), my brethren would hold that so long as an employer intends in good faith to reach an agreement no violation can be found. I agree that the decisions of the Supreme Court reveal that no per se test of good faith should be applied and that an employer's intention should be judged in the light of all the circumstances. However, I believe that more is demanded of an employer by 8(a)(5) than merely a sincere desire to reach an agreement, and I would therefore hold that certain unilateral acts during the course of collective bargaining violate 8(a)(5) apart from any finding with respect to good faith. Thus, I would enforce the Board's order insofar as it held that the change in sick leave policy was an unfair labor practice under 8(a)(5).
 
 
 53
 Section 8(a)(5) provides that it is an unfair labor practice for an employer 'to refuse to bargain collectively with the representatives of his employees.' The statute defines the duty of collective bargaining in 8(d):
 
 
 54
 'For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the meployer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation does not compel either party to agree to a proposal or require the making of a concession. * * *'
 
 
 55
 One duty imposed upon the parties by 8(d) is that of approaching the bargaining table with a sincere desire to reach an agreement. The ultimate issue for the Board and the courts with respect to this obligation is whether the respondents' acts at the bargaining table were sham and whether it in fact wished to avoid an agreement. N.L.R.B. v. Reed & Prince Mfg. Co., 1 Cir., 1953, 205 F.2d 131, 134, certiorari denied 346 U.S. 887, 74 S.Ct. 139, 98 L.Ed. 391; see N.L.R.B. v. Insurance Agents Int'l Union, 1960, 361 U.S. 477, 504, 514, 80 S.Ct. 419, 4 L.Ed.2d 454 (Frankfurter, J., concurring). The Board here refused to adopt the Trial Examiner's finding that the 'Respondent was merely going through the motions of collective bargaining without a genuine intention of trying to negotiate an agreement with the Union,' and I believe it was correct in doing so. The evidence in the record shows that the parties had seven meetings between August 20, 1956 and December 5, 1956, at which they discussed many provisions to be incorporated into a collective-bargaining agreement, and the employer's readiness to compromise on several issues belies any contention that it did not wish to conclude an agreement.
 
 
 56
 But 8(d) requires more than just a willingness to enter into a contract. It directs not only that the parties confer in good faith, but that they do so 'with respect to wages, hours, and other conditions of employment.' The Supreme Court has read this language to establish certain 'subjects of mandatory bargaining' which cannot be unilaterally withdrawn from the list of those to be bargained about. N.L.R.B. v. Wooster Division of Borg-Warner Corp., 1958, 356 U.S. 342, 349, 78 S.Ct. 718, 2 L.Ed.2d 823. Mere willingness to conclude an agreement with the union does not satisfy the employer's obligation; he must also confer with the union with respect to each and every subject of mandatory bargaining. A refusal to bargain within the meaning of 8(d) need not be a total refusal. If an employer refuses to consult the union as to any subject with respect to which bargaining is mandatory, he commits an unfair labor practice, no matter how sincere his intent. See, e.g., N.L.R.B. v. Niles-Bement-Pond Co., 2 Cir., 1952, 199 F.2d 713 (Christmas bonuses); N.L.R.B. v. Proof Co., 7 Cir., 1957, 242 F.2d 560, certiorari denied 355 U.S. 831, 78 S.Ct. 45, 2 L.Ed.2d 43 (seniority provisions and bulletin board use). The policy underlying such a rule is that to which Professor Cox alluded in the passage immediately preceding the one set out in the majority opinion:
 
 
 57
 'As in the case of refusal to execute a contract with a union, a distinction should be drawn between inquiring into the employer's state of mind in order to distinguish the sham from the real and condemning conduct which thwarts the policy of making terms of employment depend upon mutual consent.' Cox, The Duty to Bargain in Good Faith, 71 Harv.L.Rev. 1401, 1424 (1958).
 
 
 58
 As I read 8(d), together with the gloss of the Borg-Warner case, Congress has decided that with respect to subjects of mandatory bargaining the decision-making process requires consultation with the union. I do not believe it is necessary to read 'confer' in 8(d) as imposing upon the employer the duty of first obtaining the consent of the union; but it requires, at the very least, that he discuss any proposed significant change in conditions of employment with the employees' bargaining representatives.
 
 
 59
 An employer who, during the course of negotiations, unilaterally, and without notifying the union, institutes a change in one of the conditions of employment as to which collective bargaining is mandatory is, in effect, bypassing the employee representatives and negotiating with individual employees directly. See May Department Stores Co. v. N.L.R.B., 1945, 326 U.S. 376, 384, 66 S.Ct. 203, 90 L.Ed. 145; Lloyd A. Fry Roofing Co. v. N.L.R.B., 9 Cir., 1954, 216 F.2d 273, 276. If an employer is permitted to take unilateral action without even consulting the union, he will be able to undermine negotiations with respect to any one of the mandatory subjects of bargaining as effectively as if he altogether refused to bargain over it. Indeed, the failure to notify the union if there has been an opportunity to do so must in all but the most extreme circumstances signify an intent to deny the employees any role in decision-making with respect to the particular condition of employment which is involved. Such conduct may be entirely consistent with a sincere subjective intent to reach an agreement with the union on all other issues, but irrespective of the employer's state of mind it should constitute an unfair labor practice.
 
 
 60
 In this case the National Labor Relations Board charged the employer with having violated the duty to bargain by taking three steps unilaterally without notifying the union: granting merit increases, changing sick leave policy, and granting wage increases larger than those offered to the union. In my opinion, the record supports the chagre only with respect to the change in sick leave regulations.
 
 
 61
 In a notice posted at its plant on March 11, 1957, the employer announced that the sick leave rules were being changed so as to allow only five sick days per year in place of ten. Accumulation of unused days was doubled, so that an employee who used no days was no worse off than he had been under the old plan. However, the change, which was made without notice to the union, certainly affected those who were sick during the year. At that time, negotiations had been suspended for several months, but the sick leave plan was still one of the subjects left open for discussion. By changing the rules without giving the union notice of any intention to do so, the employer disregarded the federal policy calling for joint deliberation between the employer and the union before a change is made. I would hold the unilateral step to be a per se refusal to bargain with respect to a subject of mandatory bargaining and a violation of 8(a)(5).
 
 
 62
 The merit increases, however, were part of the existing wage pattern and were not granted in such a way as to discriminate against union members. Although a change in merit review procedure could not be undertaken unilaterally, N.L.R.B. v. Century Cement Mfg. Co., 2 Cir., 1953, 208 F.2d 84; N.L.R.B. v. Berkley Machine Works & Foundry Co., 4 Cir., 1951, 189 F.2d 904, individual merit reviews are permissible, White v. N.L.R.B., 5 Cir., 1958, 255 F.2d 564, 574; N.L.R.B. v. Superior Fireproof Door & Sash Co., 2 Cir., 1961, 289 F.2d 713.
 
 
 63
 Nor can it be said that the unilateral general wage increase was a refusal to bargain, although it amounted to restraint or coercion because it was higher than that offered to the union. See supra. By the time it was granted, the negotiations had reached an impasse. Having engaged in fruitless discussions for many months and learning that the union was ready to make few, if any, concessions, the employer was justified, insofar as his duty to bargain was concerned, in presuming that a general wage increase could be instituted unilaterally only. N.L.R.B. v. Andrew Jergens Co., 9 Cir., 1949, 175 F.2d 130; see N.L.R.B. v. Sands Mfg. Co., 1939, 306 U.S. 332, 59 S.Ct. 508, 83 L.Ed. 682.
 
 
 64
 I would, therefore, modify the order of the Board so as to find a 8(a)(1) violation in that the employer offered a greater wage increase to the individual employees than it did to the union and a 8(a)(5) violation (and, derivatively, another 8(a)(1) violation) in that the employer refused to bargain collectively about a change in sick leave policy. I would enforce the order as modified.
 
 
 
 [1]
 The Board stated: 'We construe the Intermediate Report as finding violations only with respect to the above specified unilateral acts. As the General Counsel filed no exceptions, we do not pass on any other allegations in the complaint. There is no allegation in the complaint that the Respondent generally bargained in bad faith in the actual negotiations with the Union. Therefore, we do not adopt the board statement in the Intermediate Report that '* * * Respondent was merely going through the motions of collective bargaining without a genuine intention of trying to negotiate an agreement with the Union. * * *"
 
 
 [2]
 Section 9(a) of the N.L.R.A, 29 U.S.C.A. 159(a) provides:
 'Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect of rates of pay, wages, hours of employment, or other conditions of employment: * * *'
 
 
 [3]
 For cases finding such violations see May Department Stores v. N.L.R.B., 1945; 326 U.S. 376, 66 S.Ct. 203, 90 L.Ed. 145; Medo Photo Supply Corp. v. N.L.R.B., 1944, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007, discussed infra. See also N.L.R.B. v. Parma Water Lifter Co., 9 Cir., 211 F.2d 258, certiorari denied, 1954, 348 U.S. 829, 75 S.Ct. 51, 99 L.Ed. 654; N.L.R.B. v. Burton-Dixie Corp., 10 Cir., 1954, 210 F.2d 199. Mere attendance at meetings by an employer in order to inform the union that he will not bargain is a refusal to bargain, N.L.R.B. v. Israel Putnam Mills, 2 Cir., 1952, 197 F.2d 116. The refusal to bargain may concern only one of the many subjects of collective bargaining. See N.L.R.B. v. Berkley Machine Works, 4 Cir., 1951, 189 F.2d 904 (wages and merit increases); N.L.R.B. v. General Motors Corp., 2 Cir., 1950, 179 F.2d 221 (group insurance program)
 
 
 [4]
 N.L.R.B. v. Reed & Prince Mfg. Co., 1 Cir., 205 F.2d 131, certiorari denied, 1953, 346 U.S. 887, 74 S.Ct. 139, 98 L.Ed. 391. Judge Magruder declared that: 'The ultimate issue whether the Company conducted its bargaining negotiations in good faith involves a finding of motive or state of mind which can only be inferred from circumstantial evidence.' 205 F.2d at pages 139-140
 
 
 [5]
 See N.L.R.B. v. American National Ins. Co., 1952, 343 U.S. 395, 401-404, 72 S.Ct. 824, 96 L.Ed. 1027 for a summary of the legislative history of the 1947 Act
 
 
 [6]
 339 U.S. 563, at page 565, 70 S.Ct. at page 828
 
 
 [7]
 This language, 343 U.S. 395, at page 400, 72 S.Ct. 824, 827, is the summarization of the Trial Examiner's findings by the Supreme Court
 
 
 [8]
 The Supreme Court in Truitt approved of N.L.R.B. v. Jacobs Mfg. Co., 2 Cir., 1952, 196 F.2d 680, in which this court enforced a Board order based upon a finding of a lack of good faith on the part of the employer because the employer 'refused to disclose pertinent facts to show that it had, in good faith, reached its decision that it could not afford to meet the union demands.' 196 F.2d at page 684
 
 
 [9]
 Compare N.L.R.B. v. Bradley Washfountain Co., 7 Cir., 1951, 192 F.2d 144, with N.L.R.B. v. National Shoes, 2 Cir., 1953, 208 F.2d 688
 
 
 [10]
 We are reinforced in our approach by the history of 8(a)(5) in our own Circuit. N.L.R.B. v. Jacobs Mfg. Co., supra at footnote 8, defined bargaining in good faith to mean 'cooperation in the give and take of personal conferences with a willingness to let ultimate decision follow a fair opportunity for the presentation of pertinent facts and arguments.' 196 F.2d 680, at page 683. Considering the totality of events the court enforced a Board order based upon a Board finding that the employer had failed to bargain in good faith
 N.L.R.B. v. Century Cement Mfg. Co., 2 Cir., 1953, 208 F.2d 84, applied the test as so defined to an employer who had unilaterally instituted merit raises and wages increases. The court declared that: 'Such unilateral action as to subject matter proper for bargaining negotiations was further evidence of a failure to bargain in good faith in violation of 8(a)(5) and (1) of the Act' (208 F.2d 84, at page 86) and enforced the Board's order based upon a Board finding that the employer had failed to bargain in good faith.
 In N.L.R.B. v. National Shoes, supra at footnote 9, the Board petitioned this court for enforcement of its order based upon a finding that the employer refused to bargain. We enforced that order declaring that: 'The problem is essentially to determine from the record the intention or the state of mind of respondents (employers) in the matter of their negotiations with the union. In this proceeding, as in many others, such a determination is a question of fact to be determined from the whole record.' 208 F.2d 691-962. To be sure, there was some gratuitous dicta of which we disapprove to the effect that a unilateral wage increase was a per se violation of 8(a)(5). See also N.L.R.B. v. Acme Air Appliance Co., 2 Cir., 1941, 117 F.2d 417; N.L.R.B. v. Superior Fireproof Door & Sash Co., 2 Cir., 1961, 289 F.2d 713.
 Cases from other U.S. Courts of Appeals in accord with our own position are: Joy Silk Mills v. N.L.R.B., 1950, 87 U.S.App.D.C. 360, 185 F.2d 732, certiorari denied, 1951, 341 U.S. 914, 71 S.Ct. 734, 95 L.Ed. 1350; N.L.R.B. v. Reed & Prine Mfg. Co., 1 Cir., supra, at footnote 4; N.L.R.B. v. Landis Tool Co., 3 Cir., 1952, 193 F.2d 279; N.L.R.B. v. Norfolk Shipbuilding & Drydock Corp., 4 Cir., 1952, 195 F.2d 632; White v. N.L.R.B., 5 Cir., 1958, 255 F.2d 564; Cone Bros. Contracting Co. v. N.L.R.B., 5 Cir., 235 F.2d 37, certiorari denied 1956, 352 U.S. 916, 77 S.Ct. 214, 1 L.Ed.2d 122; N.L.R.B. v. Harris, 5 Cir., 1953, 200 F.2d 656; Majure v. N.L.R.B., 5 Cir., 1952, 198 F.2d 735; N.L.R.B. v. Booker, 5 Cir., 1950, 180 F.2d 727; N.L.R.B. v. Dixie Motor Coach Corp., 5 Cir., 1942, 128 F.2d 201; N.L.R.B. v. Bradley Washfountain Co., 7 Cir., supra, at footnote 9; N.L.R.B. v. O'Keefe & Merritt Mfg. Co., 9 Cir., 1949, 178 F.2d 445; N.L.R.B. v. Lettie Lee, Inc., 9 Cir., 1944, 140 F.2d 243; N.L.R.B. v. F. M. Reeves & Sons, Inc., 10 Cir., 1959, 273 F.2d 710; N.L.R.B. v. Hamilton, 10 Cir., 1955, 220 F.2d 492.
 In the following cases Board orders, based upon a finding of a lack of good faith were enforced, the various courts considering the entire record. However, in each there was language, unnecessary to the decision, that might indicate that unilateral changes in working conditions were per se violations of 8(a)(5). Great Southern Trucking Co. N.L.R.B., 4 Cir., 127 F.2d 180, certiorari denied, 1942, 317 U.S. 652, 64 S.Ct. 944, 88 L.Ed. 1564; N.L.R.B. v. Herman Sausage Co., 5 Cir., 1960, 275 F.2d 229; N.L.R.B. v. Whittier Mills Co., 5 Cir., 1940, 111 F.2d 474; N.L.R.B. v. Barrett Co., 7 Cir., 1943, 135 F.2d 959; N.L.R.B. v. Andrew Jergens Co., 9 Cir., 175 F.2d 130, certiorari denied, 1949, 338 U.S. 827, 70 S.Ct. 76, 94 L.Ed. 503. See also Pacific Gamble Robinson Co. v. N.L.R.B., 6 Cir., 1950, 186 F.2d 106 (enforcement denied).
 For decisions disagreeing with the result reached herein see Armstrong Cork Co. v. N.L.R.B., 5 Cir., 1954, 211 F.2d 843; N.L.R.B. v. J. H. Allison & Co., 6 Cir., 165 F.2d 766, 3 A.L.R.2d 990 (see dissent), certiorari denied, 1948, 355 U.S. 814, 69 S.Ct. 31, 93 L.Ed. 369; Superior Engraving Co. v. N.L.R.B., 7 Cir., 1950, 183 F.2d 783, certiorari denied, 1951, 340 U.S. 930, 71 S.Ct. 490, 95 L.Ed. 671; N.L.R.B. v. Dealers Engine Rebuilders, 8 Cir., 1952, 199 F.2d 249; Lloyd A. Fry Roofing Co. v. N.L.R.B., 9 Cir., 1954, 216 F.2d 273.
 
 
 [1]
 After listing the various unilateral acts which the majority opinion quotes supra at page 701, the complaint read as follows:
 '11. By the acts described above in paragraph 10, and by each of said acts, Respondent Employer did engage in and is engaging in unfair labor practices within the meaning of Section 8(a)(1) of the Act.
 '12. By the acts described above in paragraph 10, and by each of said acts, Respondent Employer did engage in and is engaging in unfair labor practices within the meaning of Section 8(a)(5) of the Act.'
 The Intermediate Report of the Trial Examiner listed the following among the Conclusions of Law:
 '4. By failing to perform its obligation to bargain in good faith with the Union in October 1956, and thereafter, Respondent has engaged and is engaging in unfair labor practices within the meaning of Section 8(a)(5) of the Act.
 '5. By unilaterally granting merit increases in October 1956, and in January 1957, by unilaterally changing its sick leave policy on or about March 11, 1957, and by unilaterally granting wage increases in April 1957, Respondent interfered with, restrained, and coerced its employees in the exercise of rights guaranteed in Section 7 of the Act, and has thereby engaged, and is engaging, in unfair labor practices within the meaning of Section 8(a)(1) of the Act.'
 These rulings, affirmed by the Board, clearly distinguish between the 8(a)(1) and the 8(a)(5) violations. Conclusion of Law 5 found expressly that the unilateral acts, apart from the Examiner's finding of bad faith, interfered with, restrained, and coerced employees in violation of 8(a)(1).