## NATIONAL LABOR RELATIONS BOARD v. P. LORILLARD CO.

### No. 8685.

Circuit Court of Appeals, Sixth Circuit.

Feb. 14, 1941.

M. P. Glushien, of Washington, D. C. (Robert B. Watts, Laurence A. Knapp, Mortimer B. Wolf, Lewis M. Gill, Marcel Mallet-Prevost, and Morris P. Glushien, all of Washington, D. C., on the brief), for petitioner.

Charles W. Milner, of Louisville, Ky. (Charles W. Milner, B. Hudson Milner, and Crawford, Middleton, Milner & Seelbach, all of Louisville, Ky., on the brief), for respondent.

Before ALLEN, HAMILTON, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

The National Labor Relations Board asks enforcement of its order issued against respondent, a corporation engaged in the manufacture and sale of tobacco products, operating plants in Connecticut, New Jersey, Pennsylvania, Virginia, Ohio, Kentucky, and Wisconsin. The interstate character of the operation is not contested.

The Board found that the respondent had interfered with, restrained, and coerced its employees at its plant in Middletown, Ohio, in violation of § 158(1), 29 U.S.C., 29 U.S.C.A. § 158(1), by disparaging the Pioneer Tobacco Workers' Local Industrial Union No. 55, and by threatening to move its plant from Middletown if the employees continued their efforts to bargain through the union; and that, although the union represented a majority of its employees in an appropriate unit, respondent refused to bargain collectively, in violation of § 158 (5), 29 U.S.C., 29 U.S.C.A. § 158(5), by failing to negotiate in good faith regarding the union's proposed contract and by refusing to hold a bargaining conference with the union at Middletown, where the employees worked. It ordered the respondent to cease and desist from the unfair labor practices found to exist, to bargain collectively with the union in Middletown, and to post appropriate notices.

The facts as to unlawful interference with the union, in violation of § 158(1), are sustained by the record, and it is unnecessary to review them. Threats of closing the plant, when coupled with intimidation, have been held by this court (Atlas Underwear Co. v. National Labor Relations Board, 6 Cir., 116 F.2d 1020, to violate the statute. The finding of the Board that the respondent, through the intimidatory, coercive and derogatory statements of its plant manager concerning the union, has interfered with, restrained and coerced its employees in the exercise of the rights granted in § 157, is sustained by ample evidence.

The finding as to the refusal to bargain collectively demands more extended consideration. The respondent negotiated with the men by letter, stating that it was willing to bargain with the union collectively, but stipulating that the union confer with its executive officers in New York City. This situation continued from June, 1937, for approximately a year. The formal charge of unfair labor practice was filed against respondent on January 17, 1938, and an intermediate report, finding the re-spondent guilty of unfair labor practice, was filed August 15, 1938. Prior to the decision of the Board, the union called a strike at the Middletown plant, and the respondent shortly thereafter offered to hold conferences in Middletown.

The Board decided that the respondent had failed to bargain collectively, in violation of § 158(5), upon two grounds: (1) That the respondent refused to negotiate with respect to the counter-proposal which it offered to the contract submitted by the union; (2) that the respondent refused to confer in Middletown and insisted on conferences being held only in New York City.

In its written communications to the union, the respondent submitted a written contract which it stated represented its final word in the negotiations so far as questions of the closed shop, rates of pay, seniority, and other major subjects were concerned, although it indicated that upon other subjects it might adopt a different position. The Board held that this constituted a refusal to bargain, declaring that the respondent, by stating in advance certain terms to which it would not accede, had violated the National Labor Relations Act, because it did not approach the union's proposal with the open mind that is essential to genuine collective bargaining. The Board considered that the respondent thereby substituted for the bargaining required by the Act a procedure of unilateral formulation of the terms of the agreement, and rendered further negotiations, whether in person or by mail, futile, by reducing them to a series of empty discussions.

The Board is not authorized, by statute or court decision, to shape or control the course of the negotiations between employer and employee, so long as the employer bargains collectively, in accordance with the statute. The purpose of the statute is to guarantee to the employees absolute freedom of choice as to their representatives, and that freedom should not be controlled or influenced either by the employer, or by any expression or form of order coming from the Board. Cf. Hamilton-Brown Shoe Co. v. National Labor Relations Board, 8 Cir., 104 F.2d 49, 54. The Act nowhere attempts to define what agreement shall be offered by the employer or by the union in the bargaining. In fact, as pointed out by the Supreme Court, "The act does not compel agreements between employers and employees. It does not compel any

agreement whatever. It does not prevent the employer 'from refusing to make a collective contract and hiring individuals on whatever terms' the employer 'may by unilateral action determine.'" National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 45, 57 S.Ct. 615, 628, 81 L.Ed. 893, 108 A.L.R. 1352; National Labor Relations Board v. Sands Mfg. Co., 6 Cir., 96 F.2d 721, 724, affirmed 306 U.S. 332, 59 S.Ct. 508, 83 L.Ed. 682; National Labor Relations Board v. Sunshine Mining Co., 9 Cir., 110 F.2d 780. But if the employer is free to contract or to refuse to contract at will, he is likewise free frankly to state the terms upon which he may yield and those upon which he will not yield. Collective bargaining requires negotiations by the employer with representatives of the employees, chosen by themselves, freely and without coercion, and has no reference to the terms of the agreement offered so long as the parties negotiate in good faith with the view of reaching an agreement. Each party to the controversy will necessarily offer a unilateral draft of the agreement contemplated, and such action, though it results in shaping the terms finally agreed upon, is in no way illegal. The sincerity of the employer's effort in negotiating with a labor organization, under the statute is to be tested by the length of time involved in the negotiations and the persistence with which the employer offers opportunity for agreement. National Labor Relations Board v. Sands Mfg. Co., supra; National Labor Relations Board v. Sunshine Mining Co., supra. Applying this test, the record does not show that the respondent had a fixed resolve not to enter into an agreement with the union. Cf. National Labor Relations Board v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632. Here the respondent at no time refused to receive communications from the union, frequently stated that it would negotiate with the union, and over a period of a year sent numerous communications to the union, explaining its position upon questions affecting the wage scale, physical conditions of the factory, the checkoff, seniority rights, and other conditions of employment. It did not decline to enter into a written contract (Cf. National Labor Relations Board v. Sunshine Mining Co., supra, 110 F.2d at page 787), but submitted a written contract. The evidence, without contradiction, shows a sincere attempt on the part of respondent to negotiate with the union, even though, as hereafter shown, the respondent labored under the mistaken notion that these negotiations could be carried on by letter. The Board erred in deciding that the respondent had refused to bargain when it stated in advance certain terms to which it would not accede.

However, that part of the order which relates to the refusal of the respondent to bargain collectively must be affirmed because of the respondent's refusal to hold conferences at Middletown. The Board's order to bargain collectively in Middletown enjoins upon the respondent affirmative action such as the Board has authority to order for the purpose of effectuating the policies of the Act. 29 U.S.C. § 160(c), 29 U.S.C.A. § 160(c). The collective bargaining features of the statute cannot be made effective unless employer and employees cooperate in the give and take of personal conferences. While negotiations by mail are sufficient if both parties accept that procedure, if the employees do not agree, the employer must make his representatives available for conferences at the plant where the controversy is in progress, and at reasonable times and places, so that personal negotiations are practicable. The financial embarrassment to the workers and the opportunities of delay which result from insistence upon negotiations in New York City, when the situs of the controversy is in Ohio, are obvious. But an even more emphatic reason for this holding is that both employees and management in the plant where the employees are hired, where they work, where they are laid off and discharged, are better able to understand mutual needs and seasonably to negotiate fair contracts than representatives far distant, unacquainted with the actual conditions and hampered by the limitations of telegraph or telephone. If the far-flung activities of the respondent place its main executives in New York City, it can still readily designate responsible agents on the ground to deal with employees.

The respondent, in refusing to furnish representatives for personal conferences, at Middletown, refused to accept the process of collective bargaining.

Paragraph 1(a) of the Board's order, which requires the respondent to bargain collectively, also requires recognition of the union as the exclusive bargaining representative. Enforcement of this part of the order must be conditioned on a determination by the Board through an elec-

tion that the union now represents a majority in the appropriate unit of respondent's employees.

A motion for leave to intervene, together with an intervening petition, was filed by an unaffiliated union, claiming a majority of the employees, upon October 31, 1938, several weeks after the strike was called, and a petition for rehearing was filed by the respondent on November 10, 1938, approximately a year before the decision of the Board. These petitions were denied. They allege the following facts:

During the existence of the strike, the respondent received at the home office in New York City a telegram signed by certain of its Middletown employees, stating that employees who did not desire to strike had of their own volition formed a union, and that this local union then represented some 650 employees, which is a majority of the appropriate bargaining unit. The strike in question was accompanied by such violence that the Middletown Retail Merchants' Association issued a call for volunteers to prevent mob rule, and a temporary restraining order was issued by the state court, enjoining violations thereof upon the part of the union members. Troops were ordered by the Governor of Ohio to be ready to prevent riots. None of these allegations are denied, and for the purposes of this consideration we examine into their materiality, if true.

While this court, in National Labor Relations Board v. Louisville Refining Co., 6 Cir., 102 F.2d 678, refused to consider a paper purporting to be signed by a majority of the employees, asking for a discontinuance of the proceeding, we think that this case presents a totally different factual situation. In the cited case, it was obviously proper for the Board to deny a discontinuance of the proceeding. No circumstances were alleged giving reasonable grounds for believing that the union was no longer the free choice of a majority of the employees; the reasonable inference was that the employer had exercised some coercion. The cases which the Board cites in this connection are all distinguishable on similar grounds. They include International Association of Machinists v. National Labor Relations Board, 311 U.S. 72, 61 S.Ct. 83, 85 L.Ed. ——, decided November 12, 1940, and National Labor Relations Board v. Bradford Dyeing Assn., 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226.

When, as here, an election has once shown that a particular organization is the choice of a majority of the employees of the proper bargaining unit, a presumption arises that this organization continues to represent the unit, but that presumption may be rebutted by lapse of time (Hamilton-Brown Shoe Co. v. National Labor Relations Board, supra), or by a change in the conditions which demonstrates that a shift in sentiment actually exists among the employees, and is caused by other factors than the employer's refusal to bargain collectively. In National Labor Relations Board v. Fansteel Corp., 306 U.S. 240, 261, 262, 59 S.Ct. 490, 83 L.Ed. 627, 123 A.L.R. 599, the court held that in view of the change in the situation, by reason of the valid discharge of the sit-down strikers and the filling of positions with new men, there was no basis for the conclusion that after the resumption of work the organization with which the Board had ordered the employer to bargain was the choice of a majority of the employees. In the instant case both the lapse of time and the change in the conditions demonstrate that the union may no longer represent a majority.

As to lapse of time, the union was found to be representative of the employees in July, 1937. The strike was called by the union in October, 1938, after the intermediate report and while the proceedings were pending before the Board. The Board's decision was rendered in October, 1939. As to change of condition, the cessation of employment and the violence engendered in the course of the strike would have the natural result of alienating members from the union. The long period of time which the Board took to decide the case, after these events had occurred, makes it still more problematical whether the union represents the majority of the employees. In Stewart Die Casting Corp. v. National Labor Relations Board, 7 Cir., 114 F.2d 849, a similar ruling was made upon facts not as strong in favor of the employer's application. Cf. Hamilton-Brown Shoe Co. v. National Labor Relations Board, supra; National Labor Relations Board v. Automotive Maintenance Machinery Co., 7 Cir., 116 F.2d 350, decided December 12, 1940. The Supreme Court, in National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 363, 60 S.Ct. 569, 84 L.Ed. 799, has recognized the power in the circuit courts of appeals to make such an order, and tacitly approved the action.

It is essential to industrial peace that employees shall be permitted to associate together in their own organization. This gives them the right to organize in a group not affiliated with a union, if they so desire. The Board is authorized to determine the question as to whether the union still represents the employees, and this may be done with fairness to all parties by conducting another election.

Paragraph 1(a) of the Board's order is modified to require that the Board conduct an election as prayed in respondent's petition for rehearing, and with such modification, the petition of the Board for an order of enforcement is allowed.