**LLOYD A. FRY ROOFING COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS
BOARD, Respondent.**

No. 14013.

United States Court of Appeals
Ninth Circuit.

Oct. 13, 1954.

Roth & Bahrs, San Francisco, Cal., St. Sure & Moore, Oakland, Cal., for petitioner.

George J. Bott, Gen. Counsel, David P. Findling, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Frederick U. Reel and Alan R. Waterstone, Attys. NLRB, Washington, D. C., for respondent.

Before BONE, ORR and POPE, Circuit Judges.

ORR, Circuit Judge.

The National Labor Relations Board found that the Lloyd A. Fry Roofing Company, hereafter the Company, had violated § 8(a) (5) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (5), and entered a cease and desist order. The Company petitions to set the order aside. The Board found that the Com-

pany had refused to bargain collectively in that it refused to give a negotiator, whom it had appointed to represent it in the bargaining sessions, sufficient authority to engage in give-and-take collective bargaining, which the Board thinks the law requires. The Board ordered the Company to designate "as representative for the purposes of negotiation one possessing authority to reach understanding with the Union and if an understanding is reached to embody the understanding in a signed agreement." It also affirmed the Trial Examiner's finding that the Company had violated § 8(a) (5) by unilaterally changing working conditions, and ordered the Company to include in a notice required to be posted a statement that it would not violate the Act "by unilaterally changing working conditions."

The Company maintains its principal office and place of business at Summit, Illinois. It also operates a plant at San Leandro, California. On August 27, 1952, a local of Miscellaneous and Woodworkers Union, hereafter the Union, was certified as the bargaining representative at the Company's San Leandro plant. On September 19th a meeting between the Union and a Company representative was held for the purpose of negotiating an agreement. George Bahrs, a San Francisco attorney, was the Company representative. Callaway, a supervisory employee at the San Leandro plant was also present. The Union presented a contract proposal which was discussed in detail. Bahrs stated that he would submit the proposal, together with the Union's supporting contentions, to the Company and would later offer a counterproposal.

On October 7th employees of the Company, working on certain continuous machine operations, were called into one of the plant offices where they were informed that as of the following day relief periods would be abolished. These men had in the past been given a thirty-minute relief at the end of each ninety-minute working period. Some of the men protested and were told that nothing.

could be done. The Company at no time informed the Union of this change.

On October 10th, at a second bargaining meeting, Bahrs offered the Company's written counterproposal. This proposal was not acceptable to the Union representatives and explanations were made as to why it was not. Bahrs took note of the Union's position and stated that he would report the situation to the Company. At either the September 19th or October 10th meeting the Union representatives inquired as to the extent of Bahrs' authority. Bahrs replied that he could discuss proposals and make recommendations, but that he did not have authority to negotiate an agreement. The Union representatives urged that the Company either invest Bahrs with authority to negotiate an agreement, or send someone out who did have such authority. They stated that the employees were becoming impatient and that unless the Company complied with their request to send someone with authority to act, the Union could not guarantee that the men would stay on the job. At this meeting Bahrs dictated a letter to the Company in the presence of the Union representatives in which he predicted that unless the Company made a satisfactory response to the Union within a week, the plant would be struck.

At the October 10th meeting, the Union representatives having learned of the action taken by the Company on October 7th abolishing the rest periods, protested. They stated that the Union considered it improper for the Company to take such action unilaterally while negotiations were in progress. Bahrs replied that he was unaware of the Company's action, was sorry it had been taken, and would relay the Union's complaint to the Company.

On October 13th the employees at the San Leandro plant struck. Further bargaining conferences with Bahrs were held during the strike on October 29th, November 7th, and January 12, 1953. None of these conferences succeeded in settling the strike which was still in progress at the time of the hearing be-

fore the Trial Examiner. The Company, through Bahrs, offered certain concessions not satisfactory to the Union. The October 29th, November 7th, and January 12th meetings followed the general pattern of the previous ones in which Bahrs, after ascertaining the Union's views, stated that he would convey them to the Company. The Union renewed its complaint against "long distance" negotiation and asked that some one be sent out who could "sit down and try to negotiate."

Bahrs testified that he was authorized to present the Company's written proposals, to discuss them or any other matter, and to make recommendations to the Company. He did not have authority to change any of the language of the Company's proposals, even on a tentative basis, without prior approval.

The Trial Examiner found that the Company had not bargained in good faith because it had failed to invest its representative with sufficient authority to make give-and-take bargaining a reality. He specifically found that the only action which indicated the Company's unwillingness to bargain in good faith was this failure to give its representative sufficient authority and its action in unilaterally changing working conditions. He found that the Company had not demonstrated a lack of good faith by taking an uncompromising position or by failing to meet with the Union at reasonable times and places. His view was that § 8(a) (5) of the Act required that the Company send to the bargaining table a representative "who could be persuaded to effective action." He explained that this did not mean that the Company's representative must have plenary authority, but that he should be "invested with an authority comparable to that which would be given to any other representative of the party who was commissioned to seek agreement in important matters of business."

The Board in its decision stated that while it concurred in the Trial Examiner's finding that the Company failed to invest its representative with sufficient authority, it did not think that the degree of such authority was susceptible to general definition. It stated that each case must be considered in the light of its particular facts. It found that in the instant case the authority of the Company's representative "was limited to the transmittal of proposals * * *, discussion concerning such proposals, and recommendations." It found such limitation to be a violation of § 8(a) (5) of the Act.

█ The Board ordered the Company to designate "as representative for purposes of negotiation one possessing authority to reach understanding with the Union and if an understanding is reached to embody the understanding in a signed agreement." This would appear to require the designation of a representative having plenary authority. Section 8(a) (5) contains no such requirement. However, the degree of authority possessed by the negotiator is a circumstance which may be considered in determining whether there was bargaining in good faith.

In Great Southern Trucking Co. v. N.L.R.B., 4 Cir., 1942, 127 F.2d 180, 185, certiorari denied, 317 U.S. 652, 63 S.Ct. 48, 87 L.Ed. 524, it is said: "Nor is there any duty on the part of the employer to be represented in the bargaining negotiations by a person or persons with competent authority to enter into a binding agreement with the employees; but the character and powers of the person designated by the employer as the negotiating agent is yet a factor which should be taken into consideration in order to decide whether the employer's effort to negotiate was really made in good faith."

The Board cites Century Cement Manufacturing Company, 100 N.L.R.B. 1323; Standard Generator Service Company, 90 N.L.R.B. 790, 791, 800, enforced 8 Cir., 186 F.2d 606; Brown and Root, Inc., 86 N.L.R.B. 520, 521, 531, enforced as modified, sub nom. N.L.R.B. v. Ozark Dam Constructors, 190 F.2d 222; J. B.

Cook Auto Machine Company, 84 N.L. R.B. 688, 698, enforced 6 Cir., 184 F.2d 845; V-O Milling Company, 43 N.L.R.B. 348, 360, in support of its position. An examination of these cases discloses that some trial examiners have found that failure to give the representative sufficient authority in itself violated § 8(a) (5), but the Board has consistently found insufficient authority to be merely a factor in the general picture in making a determination of whether there has been a refusal to bargain in good faith.

In N.L.R.B. v. P. Lorillard Co., 6 Cir., 1941, 117 F.2d 921, there is disclosed one instance of an action which of itself was found to violate § 8(a) (5). In that case the company, an absentee owner, as in the instant case, insisted that conferences relating to its Middletown, Ohio, plant take place at its main office in New York City, or that the negotiations be confined to correspondence. The Court ruled that the company, by refusing to furnish representatives for personal conferences at Middletown, refused to accept the process of collective bargaining.

The Board urges in the instant case the contention that the Company's action amounted to no more than negotiation by correspondence since Bahrs had so little authority that he was merely a messenger boy or mailman. We are not so persuaded. Union representatives were at liberty to discuss with Bahrs any and all proposals and counter-proposals and thus secure clarification of the issues, an important element in reaching agreement. Bahrs could, and did, make recommendations to the Company, and thereby conveyed to it an appraisal of the situation and the Union's demands.

No doubt the delegation of more authority to Bahrs would have expedited the negotiations. However, the lack of authority which the bargaining representative possesses in negotiating labor agreements should not be held to be *per se* a violation of § 8(a) (5).

■ The Trial Examiner, while finding that § 8(a) (5) had been violated because of the failure to give Bahrs sufficient authority, explicitly found that in other respects good faith existed. In viewing the overall picture presented we are impressed that the precipitate action of the Union in calling a strike in the midst of the negotiations, contributed to the failure to reach an agreement. A strike was called three days after the Union's last proposal was transmitted to the Company. Certainly this terminated negotiations for the time being at least. It was a manifest indication to the Company that the Union was operating on a take-it-or-leave-it basis. The failure of the Company to invest Bahrs with more authority when considered with all other circumstances shown did not constitute an unfair labor practice.

■ We turn now to a consideration of whether the unilateral change in working conditions which the Company announced on October 7th without informing the Union violated § 8(a) (5). An increase in wages when effected during the course of negotiations without consulting the employees' collective bargaining representative constitutes a refusal to bargain in good faith. N.L.R.B. v. Crompton-Highland Mills, 337 U.S. 217, 224, 69 S.Ct. 960, 93 L.Ed. 1320; May Department Stores v. N.L.R.B., 326 U.S. 376, 384, 66 S.Ct. 203, 90 L.Ed. 145. Such unilateral action is considered to amount to bargaining with the employees individually rather than through their certified representative and defeats collective bargaining. American National Insurance Co. v. N.L.R.B., 5 Cir., 1951, 187 F.2d 307, 309, affirmed, 343 U.S. 395, 399, 72 S.Ct. 824, 96 L.Ed. 1027. Such action is comparable to the action taken by the Company in this case which we hold to be an unfair labor practice.

The Board is directed to modify its order in accordance with the views expressed in this opinion and, as so modified, its order will be enforced.