360 F.2d 494
 123 U.S.App.D.C. 360
 RETAIL STORE EMPLOYEES UNION, LOCAL 400, Affiliated with
Retail Clerks International Association, AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Amalgamated
Clothing Workers of America, Atlantic Mills
Servicing Corporation of Wisconsin, Intervenors.
 No. 19051.
 United States Court of Appeals District of Columbia Circuit.
 Argued May 3, 1965.
Decided July 13, 1965.
 
 Mr. Ronald Rosenberg, Washington, D.C., with whom Messrs. Henry Kaiser, S. G. Lippman and Tim L. Bornstein, Washington, D.C., were on the brief, for petitioner.
 Mr. Paul M. Thompson, Atty., N.L.R.B., with whom Messrs. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, and Marcel Mallet Prevost, Asst. Gen. Counsel, and Mrs. Nancy M. Sherman, Atty., N.L.R.B., were on the brief, For respondent.
 Mr. Jacob Sheinkman, New York City, for intervenor, Amalgamated Clothing Workers of America, AFL-CIO.
 Mr. Martin L. Conrad, New York City, of the bar of the Court of Appeals of New York pro hac vice, by special leave of court, with whom Mr. Sigmund Timberg, Washington, D.C., was on the brief, for intervenor Atlantic Mills Servicing Corp. of Wisconsin.
 Before PRETTYMAN, Senior Circuit Judge, and FAHY and LEVENTHAL, Circuit Judges.
 FAHY, Circuit Judge.
 
 
 1
 Local 400, Retail Store Employees Union, petitions us to review and set aside a Board order dismissing a complaint against Atlantic Mills Servicing Corporation of Wisconsin, a subsidiary of Atlantic Thrift, Inc., and the Central States Joint Board, a subordinate body of the Amalgamated Clothing Workers of America. The Company and Amalgamated were charged with conspiring in violation, respectively, of Section 8(a)(1) and (2) and 8(b)(1)(A) of the Act in connection with organizing employees of the Company at its store in Alexandria, Virginia. Two members of Amalgamated, one an employee at another of Atlantic Thrift's subsidiaries located at Knoxville, Tennessee, and President of the Amalgamated local there, were transferred to the Alexandria store at the instance of the parent Company. These two employees succeeded in signing up a majority of the employees at the Alexandria store, some 123 out of a total of 150, within two days, followed shortly by Company recognition of Amalgamated and the execution of a collective bargaining contract, thus bringing about in short order a change in representation to accord with the situation in some 30 other stores of the parent Company, Atlantic Thrift.
 
 
 2
 The trial examiner held a very full hearing, made a careful analysis of the evidence and concluded that the Company had violated Section 8(a)(1) and (2) as charged, that is, in the words of the Board, by entering into a conspiracy with the Central States Joint Board to install the Joint Board as collective bargaining agent at Alexandria, and that pursuant thereto the Company transferred the two employees to Alexandria at its own expense for the purpose of soliciting union membership in behalf of the Joint Board.[1]
 
 
 3
 The evidence clearly supports the trial examiner's findings and conclusions. Yet the Board in deciding the case contrary to his recommendations merely says he erred, adding:
 
 
 4
 Contrary to the Trial Examiner, we believe the facts and circumstances on which he relies to find the unlawful purpose and design do not on the record as a whole support a finding of a conspiracy on the part of the Respondent-Company and the Joint Board to violate the Act.
 
 
 5
 Where substantial evidence on the whole record supports the findings of a trial examiner a summary approval of his findings by the Board is no doubt sufficient; and it is often sufficient where his findings are not approved, as in this case, for the Board to find the preponderance of evidence supports different findings. But here the Board has done no more than simply state its belief that the facts and circumstances relied upon by the trial examiner do not on the record as a whole support the conspiracy finding. They do indeed support the conspiracy finding. We realize, however, that the question now is not whether there is substantial evidence to support the trial examiner's findings, as clearly is the case, but the legal adequacy of the Board's decision which differs from his. The Board, to use its language, 'adopts the finding of the Trial Examiner only to the extent consistent' with its decision. Since the trial examiner's findings are abundantly supported by the evidence, this manner in which the Board intertwined acceptance and rejection of his findings, making none of its own as required by statute,[2] leaves this court without the help necessary for review.
 
 
 6
 In a case involving possible collusion the trial examiner's ultimate finding naturally is drawn by inference from other findings based upon the evidence. The Board's inference should also rest upon some findings. This is underscored by the place accorded to findings of a trial examiner in Universal Camera Corp. v. NLRB, 340 U.S. 474, 493-495, 71 S.Ct. 456, 95 L.Ed. 456 which we think requires the Board, in such a case as this, which turns significantly upon credibility, to state more clearly the basis for its disagreement, not merely that it disagrees. For we have the statutory duty of reviewing the Board's decision when petitioned to do so. To perform our function we are entitled to more help from the Board in order intelligently to pass judgment upon its decision. See Burlington Truck Lines v. United States, 371 U.S. 156, 167, 83 S.Ct. 239, 9 L.Ed.2d 207, recently cited in Judge Washington's dissenting opinion in Texaco, Inc. v. FTC, 118 U.S.App.D.C. 366, 375, 336 F.2d 754, 765, vacated and remanded, 85 S.Ct. 1798; Braniff Airways, Inc. v. CAB, 113 U.S.App.D.C. 132, 306 F.2d 739, and cases cited; cf. Burinskas v. NLRB, order of this court of January 8, 1964; and see Section 8(b) of the Administrative Procedure Act, 60 Stat. 242, 8 U.S.C. 1007(b) (1964).
 
 
 7
 Our need for something more is pointed up by the analysis of the case made by our dissenting Brother; for his analysis is his own, not that of the Board We find nothing in the decision of the Board concerning preponderance of evidence, failure to sustain a burden of proof, or Board acceptance of the basic facts found by the trial examiner, with a different inference drawn therefrom. What we have is a Board statement of disbelief that the facts and circumstances relied upon by the trial examiner on the record as a whole support a conspiracy finding.
 
 
 8
 The unquestioned deference due the Board's expertise is not a substitute for an analysis which enables the court to understand, from what the Board sets forth in findings or otherwise, the basis for its ruling. The court must not be demanding and impose a heavy burden. Yet, though a great deal is not required, too little does not suffice.
 
 
 9
 The order is set aside and the case is remanded to the Board for reconsideration in light of our conclusion that the decision now before us is inadequate to enable us to enforce the order dismissing the complaint.
 
 
 10
 It is so ordered.
 
 
 11
 PRETTYMAN, Senior Circuit Judge (dissenting).
 
 
 12
 I disagree with my brethren on this one. The position of the Board, although succinctly stated, seems to me to be clear. The trial examiner had made findings of basic facts and had drawn from them findings of ultimate facts. Then he had reached a conclusion of fact, which was that the company had entered into a conspiracy with one of the Unions (Amalgamated) to install it as the collective bargaining agent of the employees in the Alexandria store, and had done certain acts pursuant to that conspiracy.
 
 
 13
 The Board disagreed with him in this final derived conclusion. The Board's statement was quite simple. It first pointed out that there is no direct evidence of a conspiracy. Then it said, 'Contrary to the Trial Examiner, we believe the facts and circumstances on which he relies to find the unlawful purpose and design do not on the record as a whole support a finding of a conspiracy on the part of the Respondent-Company and the (Union) to violate the Act.' The Board did not disturb any of the examiner's basic facts. It disagreed with the inference he drew from those facts.[1] This seems plain enough to me. Of course the mental processes by which one set of human minds, looking at facts, reaches one conclusion, while another mind, looking at the same facts, reaches the opposite conclusion, are frequently very unclear. And usually, in such a situation, neither conclusion is 'explainable' to a third mind. So it is here. I would not know how to 'explain' how or why these basic facts look to me as they do.
 
 
 14
 The statute here involved puts the duty of finding the facts and making the decision on the Board.[2] We have twice pointed this out recently.[3] Section 10(f) specifically makes the findings of the Board, if supported, etc., conclusive.[4] It does not refer to the findings of the examiner. I, for one, think a vast improvement would be wrought in the federal adjudicative process if the role of the examiner were changed, but that is another matter and is for the Congress, not for the courts.
 
 
 15
 The Board notably quoted the requirement of the statute (Sec. 10(f)), 'on the record considered as a whole'. This expression means that all the evidence must be taken into account, the evidence which is pro as well as that which is con, all the conflicting elements of evidence, not just the evidence tending in one direction. Our petitioner notably relies upon a few selected facts. And the Board emphasized, by quoting, the requirement of the statute that there must be a preponderance of the evidence to support a finding of violation of the statute. The provision is in Section 10(c).[5] It says that, if the Board shall not be of opinion, upon a preponderance of the evidence on the record as a whole, that there has been a violation of the law, it shall dismiss the complaint. While the statute is precise and clear in this mandate, that if the Board fails to find a violation by a clear preponderance it must dismiss (and contains an equally clear provision concerning a preponderance to the contrary), it makes no similar specific provision as to what happens if there be no preponderance of evidence one way or the other. That eventuality, like many similar eventualities elsewhere in the law, is left for disposition according to the rule as to the burden of proof. In Labor Board cases that burden is upon the General Counsel, technically the complainant.[6] That is precisely where the Board put the case now before us. It found no preponderance of proof of a conspiracy; in other words, there was a failure of proof in that respect; so it dismissed.
 
 
 16
 The complaint which was heard in this proceeding alleged that the company by its officers, etc., transferred two girl employees to Alexandria 'pursuant to an agreement' with officers, etc., of Amalgamated, for the purpose of causing the girls to solicit employees of the company to sign cards designating Amalgamated as the bargaining representative of the employees of that store. The precise nub of the complaint was the phrase 'pursuant to an agreement' (Par. VI(a)). This is what the complaint undertook to establish. This 'agreement' was the heart of the violation. The charge rested upon collusion.
 
 
 17
 The facts showed that the company, a retail chain, bought from another chain, in April, 1963, nine stores, eight in the Philadelphia area and one in Alexandria, Virginia. Four of the Philadelphia stores had been organized by the Retail Clerks Association, the charging party in the present proceeding, and the other four and Alexandria had been organized by another union not here involved. The purchasing company already had contracts covering some thirty of its existing stores with a union known to us as Amalgamated. The company, as a promotional stunt, wanted to open the nine new stores all on one and the same day. This was a unique merchandising feat. To accomplish this simultaneous-opening objective the company transferred on a temporary basis some forty or fifty of its experienced employees to the new stores. As the date drew near, trouble developed in completing the shoe department and in setting up the clerical operations in the warehouse in Alexandria. The top management called on its Knoxville store to send an experienced shoe saleslady to Alexandria to lend a hand, and called on its Norfolk store to send an experienced stock clerk. They did so. One sent its assistant manager, who was the senior in its shoe department, and the other sent its senior stock clerk. The girls did not know each other. They were active union members. After they had been designated to go, officers of Amalgamated inquired whether they would help organize the new store. They agreed. The president of the union under which Alexandria had previously been organized had advised the president of Amalgamated (both were AFL-CIO affiliates) that his union had no further interest in Alexandria; it had had some trouble there, the State of Virginia being a 'right-to-work state'. The two girls went to work and quickly signed up more than a majority of the employees. Since the company already had many contracts with this Union at others of its stores, it took little time to negotiate one for the Alexandria store. The new contract was 'about the same' as the existing ones. Nothing in the record indicates any special rapport between the company and Amalgamated. The record shows no conversations or other communications between representatives of the company and representatives of the Union prior to the demand for recognition, which was followed by a formal card check. As a matter of fact the president of the Union specifically testified (J.A. 57) that there were no such conversations, and there were several other categorical denials. No other union appeared on the scene until after the contract had been signed, although the Union now protesting knew all about the purchase of the nine stores, since it organized four of them in the new ownership. Of the nine new stores, only Alexandria became represented by Amalgamated.
 
 
 18
 As I see the evidence, the only support in it for the theory of a conspiracy between the company and Amalgamated is a vague feeling, or suspicion, that, because this affair at the Alexandria store proceeded so smoothly and so quickly, it must have been 'rigged'. But that idea fails to recognize the many facts which made for a minimum of difficulty and controversy. There clearly was no preponderance of the evidence on the record as a whole showing an agreement between the Union and the company. The Board thought there was no preponderance in that direction, and I agree.
 
 
 19
 Our petitioner says in its brief that 'the Board contented itself with the statement that there was no direct evidence of a conspiracy.' This, of course, is not true; the Board did not so content itself. Again petitioner says that the 'cryptic reversal * * * was apparently based upon the absence of direct evidence of a conspiracy.' Of course it was not apparently so based.
 
 
 
 [1]
 The trial examiner concluded, however, that Amalgamated itself had not committed the unfair labor practice, Section 8(b)(1)(A), ascribed to it in the complaint
 
 
 [2]
 'If upon the preponderance of the testimony taken the Board shall not be of the opinion that the person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue an order dismissing the said complaint.' 61 Stat. 147, 29 U.S.C. 160(c) (1964)
 
 
 [1]
 Compare Cheney California Lumber Company v. NLRB, 319 F.2d 375, 377 (9th Cir. 1963)
 
 
 [2]
 Sec. 10(c), 61 STAT. 147 (1947), 29 U.S.C. 160(c) (1958)
 
 
 [3]
 Warehousemen & Mail Order Emp., Local No. 743, etc. v. NLRB, 112 U.S.App.D.C. 280, 281, 284, 302 F.2d 865, 866, 869 (1962); International Wood-workers of America, AFL-CIO v. NLRB, 104 U.S.App.D.C. 344, 262 F.2d 233 (1958)
 
 
 [4]
 Sec. 10(f), 61 STAT. 148 (1947), amended, Sec. 13(c), 72 STAT. 946 (1958), 29 U.S.C. 160(f) (1958)
 
 
 [5]
 Supra note 2
 
 
 [6]
 NLRB v. Council Manufacturing Corporation, 334 F.2d 161, 163 (8th Cir. 1964); NLRB v. International Bro. of Elec. Wkrs. Local U. 340, 301 F.2d 824, 827 (9th Cir. 1962)