**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**COLETTI COLOR PRINTS, INC., Respondent.**

**No. 33, Docket 31146.**

United States Court of Appeals Second Circuit.

Argued Sept. 21, 1967.

Decided Dec. 1, 1967.

Leonard Wagman, Elliott Moore, Attorneys, National Labor Relations Board, Arnold Ordman, General Counsel, Dominick L. Manoli, Assoc. General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, National Labor Relations Board, for petitioner.

Hugh P. Husband, Jr., New York City, for respondent.

Before WATERMAN, MOORE and FEINBERG, Circuit Judges.

WATERMAN, Circuit Judge:

The National Labor Relations Board seeks enforcement of its order issued against Coletti Color Prints, Inc. (Company) on June 27, 1966, 159 NLRB No. 135. The Board found violations of § 8 (a) (1) and § 8(a) (5) of the National Labor Relations Act, 29 U.S.C. § 158(a) (1), (5) based upon the Company's discharge of an employee, inflammatory statements by Richard Coletti, and refusal by the Company to sign a contract with the Union to the terms of which the Board found the Company had agreed. In addition to the usual orders to cease and desist and to post notices, the Board also ordered the Company to execute the contract if the Union asked to have it executed. We think there is substantial evidence on the record as a whole to support the Board's conclusions and orders; therefore we grant enforcement.

On May 22, 1964, a majority of 9 lithographic employees, an appropriate unit, at the company's Baldwin, New York, plant designated Local 1, Amalgamated Lithographers of America, AFL–CIO (Union) as their collective bargaining representative. Thereafter, on May 26, the Union filed a representation petition with the Board. At subsequent conferences at the Board's regional offices concerning the petition the Company was represented by Richard Coletti and at one of the conferences Coletti asked the Union vice-president, one Glassman, to suggest a labor lawyer whom Coletti might retain. Glassman suggested Daniel Arvan, the counsel for an employer association with which the Union had previously negotiated contracts. Coletti retained Arvan "to represent Coletti Color Prints, Inc., to negotiate a collective-bargaining agreement on behalf of that company with [the Union]" on June 11, 1964. On the same day Arvan sent the Union a stipulation, signed by Richard Coletti, recognizing the Union as the employees' representative, and Glassman then withdrew the election petition.[1]

Using as a starting point the Union's standard contract, a contract with which both of them were familiar, Arvan and Glassman met to bargain formally on June 29, and August 7, 1964, for about 2½ hours each time. Additionally, they bargained informally on many other occasions when they also were discussing other matters. They had little or no discussion about several of the relatively routine clauses of the standard contract (e. g., union recognition, union security without checkoff, no strike, wash-up time, bulletin board, apprentices, right to terminate, no transfer of equipment, foreign work, no change in area practices, international approval). Those were not changed in any way, but other provisions, mostly economic ones, were substantially modified, and, as so modified, were incorporated in November 1964 into a "supplementary agreement" which was annexed to the standard contract. It was intended that the "supplementary agreement" was to supersede the standard contract whenever its terms were in conflict with those of the standard contract. The bargaining was then concluded, the standard contract and "supplementary agreement" constituting the package Arvan and Glassman negotiated. Although these negotiations were completed in November 1964, Glassman agreed that

---

1. Glassman testified at the hearing that he had received such a stipulation signed by Coletti, but the stipulation itself was never placed in evidence.

execution of the contract by the employer could be delayed until February 1965.

At the hearing before the Board's Trial Examiner Arvan testified that he kept in touch with Richard Coletti all through the negotiation period and discussed with him in great detail the terms he was negotiating. Arvan further stated that "ultimately all matters were discussed and agreed upon between Coletti and the union—between Coletti in behalf of the company and Glassman in behalf of the union." Furthermore, he said that "I say Glassman and Coletti both agreed to the terms incorporated in this document. I said this document is the contract that was drawn incorporating what both Coletti and Glassman had agreed to. Glassman on the part of the union and Coletti on behalf of his company. This document was sent to Glassman on February 19th, 1965 for his approval as to language and content before I sent it to the employer for his approval and signature." As Richard Coletti never testified at the hearing, Arvan's testimony as to the conversations he had with Coletti was unchallenged and undisputed.

Glassman approved the contract and it was then presented to Coletti. However, by the end of February Glassman had not yet received a signed contract. He contacted Arvan, who testified at the hearing that he in turn spoke to Coletti and Coletti told Arvan that he would send or deliver the signed contract to Arvan by March 16. Glassman testified that on March 16 he received a call from a lawyer named Rains, who claimed that he now represented Coletti. Glassman sought and obtained by telegram from Coletti confirmation of this change. Thereafter Glassman met with Rains and discussed the agreement, but he declined to renegotiate matters which he had supposed he had concluded with Arvan. Finally, however, he did agree to a modification of the previously agreed-upon arbitration clause. Rains said he would send the new provision to Coletti and Glassman could expect to receive signed copies on March 23. When

he had not received word by mid-April Glassman attempted to contact Rains, but the latter was on vacation. At the end of April Rains called Glassman to inform him that he no longer represented Coletti.

Glassman immediately contacted Coletti and demanded a meeting with him. A few days later, when they met, Glassman inquired where things stood. Coletti stated he was not satisfied with the work performed by Arvan and Rains. On May 5 they met again, and this time Coletti submitted "proposals for negotiations" to Glassman, proposals which covered most of the items disposed of in the "supplementary agreement." Some of the proposals were more beneficial to the workers than were the related provisions in the earlier "agreement." Nevertheless, Glassman rejected the proposals, stating they were a "complete repudiation of everything that had gone before," and stormed out of the meeting. Coletti ran after him, voicing his willingness to negotiate. Glassman indicated a strike might occur, and a one-day strike did occur on May 6. In any discussions that may have occurred after May 6, Glassman adamantly refused to deviate from the Arvan-negotiated terms of the "supplementary agreement."

While all of this was taking place, Coletti had hired, on December 2, 1964, one Sidney Resnick, an acknowledged member of the Union, who testified at the hearing. According to Resnick, Coletti and Resnick had several conversations, some of which occurred in January and February 1965, and during which Coletti made such statements as: He "wasn't going to sign the union contract unless it was on his terms and his terms only;" he "would rather go back to a three or four man operation rather than sign a union contract other than on his own terms;" "the distinctiveness of his shop required him to have a contract on his own terms;" and he had an "attorney drawing up a contract to suit his plans and turning it over, trying to get the union to sign this contract." Later on, when Coletti's difficulty with the

Union reached its peak (around May 7, 1965) Coletti discharged Resnick, saying he had to let him go because he "was the only full-fledged union member in his shop and he [Coletti] was having trouble negotiating with the union." However, despite the discharge, Resnick testified at the hearing that he was not seeking reinstatement or any back pay.

On these facts the trial examiner determined that: Richard Coletti was a supervisor of the Company because he hired and fired Resnick and the statements made by him to Resnick constituted restraint, coercion and interference and therefore constituted a violation of § 8(a) (1), as did also the discharge of Resnick. However, he also determined that the General Counsel did not carry his burden of showing that Richard Coletti was an officer, director or agent of the Company who had power to bind the Company to a collective bargaining agreement, and, because neither the acts of Coletti nor those of the lawyers he retained could bind the Company, the Company had not refused to bargain and was not in violation of § 8(a) (5). Nevertheless, the trial examiner, in the event the Board were to disagree with him and with his conclusion as to Coletti's power to bind the Company, made additional findings. He found that Coletti, by retaining Arvan to negotiate a collective bargaining contract, clothed Arvan with authority to bind the Company and also that Coletti assented to the terms of the agreement when they were presented to him by Arvan. Based upon either or both of these findings he concluded that the Company was obligated to sign the contract. He also found that the Company refused to sign, that its refusal constituted a § 8(a) (5) refusal to bargain, and that this refusal to bargain was not only evidenced thereby but was also evidenced by Coletti's statements to Resnick. The Board adopted the trial examiner's decision except that it determined, contrary to the examiner's conclusions, that Richard Coletti did have power to bind the Company to a labor contract and therefore the Company had unlawfully refused to bargain. Thus adopting the trial examiner's alternate findings, the Board added, to the trial examiner's recommended order to cease and desist and to post appropriate notices, a direction that the Company sign the Arvan-Glassman agreement if the union should request it to do so.

█ Perhaps the most difficult question herein to resolve is whether there is substantial evidence on the record as a whole to support the Board's finding that Richard Coletti had authority to bind the Company to a collective bargaining agreement. In a situation such as the one before us, where the Board and the trial examiner differ on a question of fact, we must be guided by the Supreme Court's language in Universal Camera Corp. v. NLRB, 340 U.S. 474, 496–497, 71 S.Ct. 456, 469, 95 L.Ed. 456 (1951):

> We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The "substantial evidence" standard is not modified in any way when the Board and its examiner disagree. * * * The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case. To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum determine whether evidence is "substantial."

It should be noted at once that, in disagreeing with the examiner here, the Board did not disturb any of his rulings on credibility, as it did those of the examiner in Rocky Mountain Natural Gas Co. v. NLRB, 326 F.2d 949 (10 Cir. 1964); NLRB v. Dal-Tex Optical Co., 325 F.2d 78 (5 Cir. 1963); and NLRB v. Porter County Farm Bureau Coop. Ass'n, 314 F.2d 133 (7 Cir. 1963). Thus these cases are inapposite. The Board chose merely to draw a different inference from that drawn by the exami-

ner from the same testimony that both Board and examiner accepted as credible. In such a case, the decision of the examiner is but one more factor, albeit a factor detracting from the Board's decision, in the whole record which is to be weighed in determining substantiality. See Universal Camera Corp., supra; NLRB v. Gala-Mo Arts, Inc., 232 F.2d 102 (8 Cir. 1956); Local No. 3, United Packinghouse Workers of America, CIO v. NLRB, 210 F.2d 325 (8 Cir. 1954).

In finding that the General Counsel had carried his burden of proving that Coletti could bind the Company to a labor contract the Board set forth succinctly the reasons for its own viewpoint.[2] In so doing, we believe the Board touched all of the bases precedent to meaningful review in the federal appellate courts:

> The Board cannot satisfy its statutory function merely by stating that it disagrees with a trial examiner. It must make clear the basis of its disagreement. Its decision must be presented in such form as to enable this court to pass intelligently on that decision, and to determine whether it is rationally related to findings and supported by substantial evidence. Retail Store Employees Union, Local 400 v. NLRB, 123 U.S.App.D.C. 360, 360 F.2d 494 (July 13, 1965). In our opinion, the Board properly discharged this function. Its decision sets forth

and makes clear that the Examiner's decision was given attentive consideration. The Board did not take up every evidentiary item discussed by the Examiner. No such requirement can reasonably be implied. It suffices · that the Board addressed itself to key items of evidence which were crucial * * *, and fairly indicated the basis on which it was drawing inferences contrary to those of the Examiner. Oil, Chem. & Atomic Wkrs. Int. U., Local 4-243 v. NLRB, 124 U.S.App.D.C. 113, 362 F.2d 943, 946 (1966).

As noted above, this is a case in which the Board merely drew a different inference from that of the trial examiner. Because the inference so drawn by the Board was not unwarranted, though we ourselves might not have drawn the same inference, and having in mind that Congress has charged the Board, not the Board's trial examiner or this court, with the ultimate responsibility for making factual determinations, we hold that there is substantial evidence on the record as a whole to support the Board's finding that Richard Coletti had authority to bind the Company to a collective bargaining agreement.

Accepting the Board's adoption of the examiner's alternate finding of a Company refusal to bargain, as supported by substantial evidence taken from the whole record, we would have no difficulty

---

2. The Board pointed out that:
   In our opinion the credited evidence, as set forth in the Trial Examiner's Decision, amply supports an inference that Coletti occupied a position with Respondent which carried with it the authority to act on behalf of the Respondent in matters dealing with collective bargaining. Thus, we note that the Trial Examiner found that the Union was the majority representative of Respondent's employees and that it enjoyed such status on June 11, 1964, "when Respondent recognized it as the exclusive collective bargaining agent of the employees in (the) unit." The credited evidence shows that recognition was extended by stipulation signed by Coletti on behalf of Respondent. Respondent admitted recognizing the Union in its answer and took no exception

to the Trial Examiner's finding with respect to the manner in which recognition was extended. It is, therefore, evident that if Coletti possessed the authority to establish a collective-bargaining relationship on behalf of his principal by recognizing the Union, he had at least commensurate authority to bargain on behalf of that principal in the contract negotiations which that relationship entails and which the Act demands. 159 NLRB at 1593.
   The Board also noted by footnote that Respondent apparently did not decide to make an issue out of Coletti's relationship with the company until after the hearing before the trial examiner, for in its answer to General Counsel's complaint and in its brief to the Trial Examiner Richard Coletti was referred to as "President" of the company.

in agreeing with the Board that there had been an unfair labor practice sufficient to justify a bargaining order. It seems clear to us that, at the least, the Union was misled by the statements of both Arvan and Rains into believing an agreement had been reached as to the terms of the contract and that only the formal execution of the contract remained. In such a situation it has been held that an employer violated § 8(a) (5). NLRB v. Mayes Bros., Inc., 383 F.2d 242 (5 Cir. 1967) (Wisdom, J.). Alternatively, it would appear that a bargaining order would be justified, the Company having withdrawn bargaining authority from its attorney after a substantial period of time and having disavowed the fruits of his bargaining after accord had seemingly been reached. See NLRB v. Gittlin Bag Co., 196 F.2d 158 (4 Cir. 1952) (*per curiam*). However, finding that the present case involved a situation which differed somewhat from the ones just described, the Board, instead of ordering the Company to bargain, ordered the Company to execute the "agreement" reached as a result of the bargaining negotiations of Arvan and Glassman.

■■ The Board is authorized under § 10(c) of the Act, 29 U.S.C. § 160(c), to order the execution of a collective bargaining agreement. See, e. g., H. J. Heinz Co. v. NLRB, 311 U.S. 514, 61 S.Ct. 320, 85 L.Ed. 309 (1941); NLRB v. M & M Oldsmobile, Inc., 377 F.2d 712 (2 Cir. 1967); NLRB v. George E. Light Boat Storage, Inc., 373 F.2d 762 (5 Cir. 1967); NLRB v. Ogle Protection Service, Inc., 375 F.2d 497 (6 Cir. 1967); Retail Clerks Int'l Ass'n, AFL–CIO v. NLRB, 373 F.2d 655 (D.C.Cir.1967); NLRB v. Huttig Sash & Door Co., 362 F.2d 217 (4 Cir. 1966). However, before it can require a company to sign a contract the Board must show that agreement upon the terms of that contract had in fact been reached. See, e. g., H. J. Heinz Co. v. NLRB, supra; NLRB v. Huttig Sash & Door Co., supra. In the present

case the Board adopted the trial examiner's alternative finding that agreement between the Company and the Union had in fact been reached regarding all the terms of the collective bargaining agreement, for (1) Arvan had authority to bind the Company because Coletti without circumscribing or limiting Arvan's authority had retained him to negotiate a contract with the Union (actual authority) and, alternatively, (2) Coletti had assented to the terms of the agreement when they were presented to him (ratification).

■ Before proceeding to discuss whether there was a ratification, which we deem to be the dispositive issue, we should point out that the trial examiner's conclusion that Arvan had actual authority to bind the Company is erroneous. It does not necessarily follow that one hired by a company "to negotiate" a collective bargaining agreement with a union has authority to bind the company to the terms he negotiates without receiving subsequent approval of those terms by the company. Cf. Singer v. Klebanow, 9 Misc.2d 1016, 168 N.Y.S.2d 487 (Sup. Ct. Westchester Co. 1957). Under our present labor law, there certainly is no duty on the part of an employer to be represented at the bargaining table by a person with competent authority to enter into a binding agreement with the employees, although the bargainer's lack of such authority is a factor to be considered in evaluating the employer's good faith. See Lloyd A. Fry Roofing Co. v. NLRB, 216 F.2d 273 (9 Cir. 1954), modified, 220 F.2d 432 (9 Cir. 1955); Great Southern Trucking Co. v. NLRB, 127 F.2d 180, 185 (4 Cir.), cert. denied, 317 U.S. 652, 63 S.Ct. 48, 87 L.Ed. 524 (1942); Capital Transit Co., 106 NLRB 169 (1953); cf. Chicago, Rock Island & Pacific R. Co. v. Switchmen's Union, 292 F.2d 61 (2 Cir. 1961), cert. denied, 370 U.S. 936, 82 S.Ct. 1578, 8 L.Ed.2d 806 (1962).[3] There being no evidence in the record that either Arvan or Rains was specifically told by Coletti that he had

---

3. For a case in this court where the lack of authority was considered significant,

see NLRB v. A. E. Nettleton Co., 241 F.2d 130, 134 (2 Cir. 1957).

power to bind the Company, there is no substantial evidence on the record as a whole to support a conclusion that either of them possessed that power. What evidence there is on the record only shows that Arvan reported back to Coletti after the bargaining sessions and discussed the terms which were the subjects of bargaining. This evidence clearly militates against the negotiators having any power to bind.

█ The above is merely by way of clarification, for we do agree with the Board that Coletti ratified what Arvan and Glassman had wrought. Our holding in NLRB v. Marcus Trucking Co., 286 F.2d 583 (2 Cir. 1961), is dispositive on the ratification issue. There an employer was said to have ratified the fruits of a collective bargaining negotiation by his statement to union officials that the company was under contract to that union. Marcus Trucking Co. was a much weaker case than the one at bar, for there the union officials' testimony as to the ratification statement was contradicted by the testimony of the employer himself. Nevertheless, the court in Marcus Trucking Co. was of the belief that it could not say the evidence relied upon by the Board was not substantial evidence. 286 F.2d at 588–590.

Respondent suggests to us several inferences which may be drawn from the circumstances of Arvan's discharge and from Resnick's testimony regarding statements made to him by Richard Coletti, and which, if drawn, derogate from the conclusion that the Arvan-Glassman agreement was ratified.[4] We make the same answer to these suggestions that was made to similar suggestions in Marcus Trucking Co.:

> However, even if we were free to use our own judgment and reject [the union representatives'] testimony, we would be required to uphold the Board's finding that respondent became bound to the Association contract. For (1) this is a "question of fact" within § 10(e) of the National Labor Relations Act, 29 U.S.C.A. § 160(e), and (2) we cannot disturb findings of such a "fact" based on inferences within the range of reason although we should not have drawn them ourselves. 286 F.2d at 590.

█ Respondent further contends that the Company should not be ordered to execute the contract because Arvan and Glassman did not bargain to a complete agreement. This is shown, it is said, because in the negotiations they conducted a large number of the provisions in the standard contract were not discussed but were agreed to perfunctorily. Moreover, it is argued that several of the provisions which were discussed had no relevance to Coletti's situation. We disagree with respondent's contentions; we are unwilling to hold that negotiators must discuss at great length those provisions of a standard contract which appear to be non-controversial or unimportant to both parties, where the approach to bargaining being used is that of shaping a standard contract to fit a particular employer's circumstances. Such a holding would subject the bargaining process to unnecessary

---

4. Respondent theorizes that Coletti never approved the contract, and advances the thought that his statement to Arvan that he would have the contract in the latter's office, signed, on March 16, 1965, was a stall technique whereby Coletti gained more time to find new counsel. It is claimed that this interpretation of the events is reasonable because new counsel was in fact retained on March 16 and no signed contract was delivered to Arvan. In further support of this interpretation Respondent points to the statement Coletti made to Resnick to the effect that he was dissatisfied with the work Arvan had done for him and that he felt Arvan had not "treated him fairly." However, Coletti did not testify, and there was no testimony negating some of the testimony given by Arvan regarding events which had occurred before March 1965, such as his testimony that all contract provisions were discussed with Coletti and approved by him as negotiations were winding up in late 1964. The inference of full ratification the Board drew from this uncontradicted testimony is in no way rebutted by Respondent's argument.

delays. The negotiators must be given some latitude in this area so that labor disputes may be speedily resolved. Moreover, in this case, we must also take account of Arvan's uncontradicted testimony that "ultimately *all* matters were discussed and *agreed upon* between Coletti and the union—between Coletti in behalf of the company and Glassman in behalf of the union." (Emphasis supplied.)

Therefore, we uphold the Board's conclusion that Coletti ratified the Arvan-Glassman agreement, and we grant enforcement of the Board's order that the Company execute the contract if requested to do so by the Union.

█ Finally, we note our agreement with the Board's findings, conclusions and orders regarding the remaining unfair labor practices. Sidney Resnick having specifically disclaimed such relief at the hearing, the Board could not order that he be given reinstatement and back pay on account of his discharge, Colonie Fibre Co. v. NLRB, 163 F.2d 65, 70 (2 Cir. 1947), and it did not so order. Therefore, the Board's petition for enforcement of its order is granted without any modification.